In re The HILLARD DEVELOPMENT CORPORATION, etc., Debtor.

In re Richmond Health Care, Inc., d/b/a Sunrise Health and Rehabilitation Center, Debtor.

In re Hillard Development Corporation, d/b/a Pilgrim Manor Nursing Home, d/b/a Provident Nursing Home, Debtor.

Simonetti Development, LTD., Plaintiff,

v.

Hillard Development Corporation, Defendant.

Bankruptcy Nos. 90–27588–BKC–AJC, 98–25060–BKC–AJC, 98–25061–BKC–AJC.
Adversary No. 99–2008–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

Aug. 4, 1999.

858

Gregory A. Martin, Miami, Florida, for plaintiff.

James B. Boone, Fort Lauderdale, Florida, for defendant.

## OPINION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND RELATED MOTIONS

JAMES D. GREGG, Chief Judge.[1]

### I. ISSUE

Although this opinion addresses a variety of issues, the principal question is whether a statute of limitations defense may defeat a creditor's rights under a previously confirmed chapter 11 plan.

### II. JURISDICTION

The court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. The proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(K) ("determinations of the validity, extent, or priority of liens").[2]

### III. DISCUSSION REGARDING PROCEDURAL ASPECTS

#### A. General

Debtor-defendant Hillard Development Corporation ("Hillard") and a related corporation filed voluntary chapter 11 cases on July 20, 1998.[3] The current case, Hil-

---

1. Honorable James D. Gregg, Chief Judge, United States Bankruptcy Court for the Western District of Michigan, sitting by designation.

2. Because subject matter jurisdiction exists with respect to the currently pending base cases, the court need not address the murky area of whether sufficient jurisdiction exists in connection with the debtors' previous 1990 base cases.

3. In these jointly-administered cases, there was previously some confusion in the designation of the base case captions. The undersigned judge has captioned this opinion, and

lard's second this decade, occurred approximately six years after the confirmation of its amended plan of reorganization in the first chapter 11 proceeding (hereinafter "First Plan"). The First Plan restructured Hillard's obligations to its prepetition creditors including the Resolution Trust Corporation ("RTC"), as receiver for the Home Federal Savings Association of Kansas City, F.A. Plaintiff Simonetti Development, Ltd. ("Simonetti") is the successor in interest to the RTC's rights under the First Plan. No plan of reorganization has been confirmed in the present chapter 11 proceeding.

Complaining that Hillard failed to take various actions required under the First Plan, such as executing a new promissory note and mortgage modification agreements, Simonetti commenced this adversary proceeding on January 13, 1999 to compel Hillard to comply with the First Plan. Simonetti also seeks a determination concerning the validity and extent of certain liens it claims on property of Hillard's current bankruptcy estate by virtue of the First Plan. *See* Complaint (Court Paper No.1) (hereinafter "C.P. \_\_\_\_").

Presently before the court are three motions: Hillard's Motion to Dismiss, Hillard's Motion for Summary Judgment (hereinafter "Summary Judgment Motion"), and Simonetti's Motion for Nunc Pro Tunc Extension of Time to File Exhibits in Opposition to Motion for Summary Judgment (hereinafter "Nunc Pro Tunc Motion"). On May 25, 1999, the court heard lengthy oral argument regarding the Motion to Dismiss and Summary Judgment Motion. Because, in moving to dismiss, Hillard relied on matters outside the pleadings (which requires the court to treat the motion as one for summary judgment), and because Hillard also moved for

summary judgment under Fed.R.Civ.P. 56 on the same grounds, the court regards the Summary Judgment Motion as subsuming and incorporating the Motion to Dismiss. Accordingly, the court will deny the Motion to Dismiss as moot, and will address the Summary Judgment Motion in this opinion.

### B. *Effect of Amended Complaint.*

At the outset, the court will resolve one procedural problem arising from Simonetti's service of an amended complaint following the oral argument. The court granted Simonetti permission to serve an amended complaint in an order dated June 7, 1999. *See* C.P. No. 35.

Prior to permitting the amendment, in an effort to discern any related prejudice, the court made several inquiries of Simonetti's counsel. At the oral argument, Simonetti's counsel informed the court that the amended complaint merely added a claim for relief in the form of an equitable lien. *See* Transcript of Oral Argument on Defendant's Motion to Dismiss and Defendant's Motion for Summary Judgment at 5–7 (hereinafter "Tr. at \_\_\_\_"). The supporting allegations set forth in the original complaint are substantially unchanged.

Hillard's counsel did not articulate any prejudice arising from the proposed amendment, and later acknowledged that the dispositive motions apply equally to the original and amended complaints. *See* Letter from James B. Boone to the undersigned judge, dated July 7, 1999. In short, because the issues presented in the Summary Judgment Motion apply equally to Simonetti's original and amended complaints, the court and the parties treated the Motion to Dismiss and Summary Judgment Motion as if both were directed at the amended complaint. *See* Tr. at 17[4];

---

the related order, in the manner prescribed by the Honorable A. Jay Cristol in the Order Advising Parties of Scrivener's Errors in Case Dockets and Files and Setting Forth Directives for Proper Identification and Loca-

tion of Papers Affected by Scrivener's Errors, dated July 14, 1999.

4. The Motion to Dismiss and the Summary Judgment Motion are the only motions filed by Hillard that are the subject of this opinion.

*cf. Reflectone, Inc. v. Farrand Optical Co.,* 862 F.2d 841, 845–46 (11th Cir.1989) (where new allegations in amended complaint were not material to defendant's existing motion for summary judgment, it was not error to carryover pending motion for summary judgment to amended complaint). The court, of course, will not deprive Hillard of an opportunity to address any new issues raised in the amended complaint.

### C. *The Nunc Pro Tunc Motion, Judicial Notice, and the Summary Judgment Record.*

Simonetti's failure to serve and file a response to the Summary Judgment Motion prior to the date of the hearing, and its efforts to correct this misstep by invoking the mandatory judicial notice provisions of Fed.R.Evid. 201(d) and by filing the Nunc Pro Tunc Motion, require the court to address another cloudy procedural matter before reaching the merits of Hillard's dispositive motion.

Two days after the May 25, 1999 oral argument on the Summary Judgment Motion, Simonetti filed and served its Nunc Pro Tunc Motion, the stated purpose of which is to persuade the court that it should consider the documents that Simonetti served on Hillard's counsel on May 25, 1999—the date of the hearing on the Summary Judgment Motion. Although mistakenly contending that the documents were timely served and filed, Simonetti alternatively argues that, under the "excusable neglect" standard of Fed.R.Bankr.P. 9006(b)(1), the court should consider its untimely submitted opposition.

The court begins its analysis with reference to the text of Fed.R.Civ.P. 56 (made applicable herein by Fed.R.Bankr.P. 7056) which mandates procedures relating to motions for summary judgment:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits.

*See* Fed.R.Civ.P. 56(c). Under Rule 56(c), therefore, the issue is whether Simonetti served opposing affidavits prior to the date of the hearing.

There is no dispute that the exhibits in opposition to the motion for summary judgment were not served "prior to the day of hearing": the transcript reveals that Simonetti's counsel handed Hillard's counsel the responsive papers on the afternoon of the hearing and Simonetti's counsel's own certificate of service indicates that the response was served, by mail, on the date of the hearing. *See* Affidavit of Gregory A. Martin at ¶ 13 and Exh. E attached thereto (C.P.30). To justify its tardiness, Simonetti contends that "Rule 56(c) does not by its terms require filing of exhibits at least one (1) day prior to the hearing, nor does it impose any requirement that the opposing party serve and file a memorandum of law." *See* Nunc Pro Tunc Motion at ¶ 2 (C.P.28). Instead, according to Simonetti, the rule simply permits the responding party to serve "opposing *affidavits.*" *Id.* (original emphasis). In short, Simonetti would have the court draw two distinctions: (1) a distinction between "service" and "filing"; and (2) a

---

The court notes that Hillard filed documents "renewing" its motions, but the court considers the renewed motions merely as protective filings. Although Fed.R.Civ.P. 15(a) could be read to require Hillard to serve a response to the amended complaint within ten days after service of the amended complaint, the court believes that the time-frame set forth in Fed. R.Bankr.P. 7012(a) controls: the court had not denied or postponed ruling on the Motion to Dismiss when it granted the motion to amend, and the order granting the motion to

amend did not prescribe a time period other than that set forth in Fed.R.Bankr.P. 7012(a). Although the course of proceedings herein may arguably give rise to a conflict between Fed.R.Bankr.P. 7012(a) and 7015 (which incorporates Fed.R.Civ.P. 15(a)), given the pendency of the Motion to Dismiss and the similarity between Simonetti's original and amended complaints, good sense and economy dictate that the former rule controls. *See* Fed.R.Bankr.P. 1001.

distinction between "affidavits" and "exhibits." The court accepts the first distinction, but rejects the second.

 Under Fed.R.Civ.P. 5(d), made applicable to adversary proceedings by Fed.R.Bankr.P. 7005, all papers after the complaint that are required to be served upon a party must be filed with the court within a reasonable time. *See* Fed. R.Civ.P. 5(d). Both the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure thus distinguish between service and filing of papers. The filing, however, must be accomplished within a reasonable time, and this court concludes that filing on the date of hearing, because it deprives the court of the opportunity to review the papers in advance of the argument, is not reasonable under Fed.R.Civ.P. 5(d).[5] Thus, Simonetti's distinction between service and filing is fruitless.

 Simonetti's other counterfeit distinction—between "affidavits" and "exhibits"—is equally unavailing because an affidavit is the usual conduit through which a litigant presents documents or exhibits to the court on a motion for summary judgment. Indeed, Fed.R.Civ.P. 56 requires that papers and other documents submitted to the court on a motion for summary judgment be "sworn or certified"—a requirement usually satisfied by attaching documents to an affidavit. *See* Fed. R.Civ.P. 56(e). Moreover, a meaningful

hearing on a motion for summary judgment requires an adverse party to have advance notice of the written materials to be considered at the hearing. To permit otherwise may result in extreme prejudice or inexcusable surprise. For this reason, Rule 56(c) requires service of opposing affidavits, if any, prior to the day of the hearing. There is no just reason to construe Fed.R.Civ.P. 56(c) as (1) requiring the opponent of a summary judgment motion to serve affidavits *prior* to the hearing, but (2) allowing the opponent to spring its documentary opposition upon the moving party at the hearing. *See* Fed. R.Bankr.P. 1001 & Fed.R.Civ.P. 1 (rules shall be construed to secure "just, speedy, and inexpensive" determination of proceedings). The thrust of modern procedural rules is to prevent the ambush that Simonetti is attempting here.

Ironically, if the court were to draw the distinction that Simonetti advocates between "affidavits" and "exhibits," Rule 56(c) would not require Simonetti to file exhibits prior to the hearing, but Local Rule 5005–1(F)(1) would.[6] The court, however, rejects the distinction and construes the reference to "affidavits" in Rule 56(c) and Local Rule 5005–1(F) as including the exhibits and other papers that a litigant would have the court consider on a motion for summary judgment. Affidavits *and* exhibits in opposition must be served and filed before the hearing.

**5.** For most motions, the judges of this court have in effect determined by local rule that a response filed "not later than 4:30 p.m. on the second business day prior to the hearing" is filed "within a reasonable time." *See* Local Rule 5005–1(F) As explained below, however, this Local Rule does not apply to motions for summary judgment, although it probably should and certainly could. *Id.* ("This subdivision [requiring second business day filing and receipt of motion papers] shall not apply to affidavits filed pursuant to Bankruptcy Rule 7056.").

**6.** As noted above, Local Rule 5005–1(F)(1) requires that "[m]emoranda, affidavits and other papers intended for consideration at any hearing already set before the court shall

be filed and served so as to be received by the movant and the court not later than 4:30 p.m. on the second business day prior to the hearing ..." Local Rule 5005–1(F)(1). However, the second business day requirement "does not apply to *affidavits* filed pursuant to Bankruptcy Rule 7056." *Id.* The word "affidavits" must have the same meaning in both Fed.R.Civ.P. 56(c) and Local Rule 5005–1(F)(1). Thus, if the court reads the word "affidavits" as narrowly as Simonetti suggests, the second business day requirement would not apply to "affidavits" in opposition to a motion for summary judgment, but it would apply to "memoranda" and "other papers" such as exhibits.

■ In a further effort to cure its failure to respond to the Summary Judgment Motion, Simonetti instructed the court to take judicial notice of the entire docket in two 1990 bankruptcy cases involving Hillard and a related entity (Richmond Health Care, Inc.), and "the adversaries against Paula Griswold in the 1990 Hillard case." *See* Tr. at 47. In support of its demand at oral argument, Simonetti stated that this court "shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d). Although demanding that the court take judicial notice, Simonetti has completely failed to supply "necessary information."

■ Under Fed.R.Evid. 201, the court may take judicial notice of an "adjudicative fact," provided that the party who asks the court to take judicial notice persuades the court that "the adjudicative fact sought to be noticed is in fact proper for notice under Federal Rule of Evidence 201...." *In re Tyrone F. Conner Corp.*, 140 B.R. 771, 781 (Bankr.E.D.Cal.1992). To meet this burden, Simonetti was required to,

> (1) persuade the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source "whose accuracy cannot reasonably be questioned" and (2) must also supply the court with the source material needed to determine whether the request is justified.

*Id.* Although Simonetti eventually narrowed its call for judicial notice somewhat,[7] its counsel failed to specify particular facts to be noticed, and, more practically, failed

to supply the court with any of the documents to be judicially noticed. As aptly observed by another judge,

> the Court will not rummage through the Court files and take notice of those documents requested absent those documents being supplied to the Court. It is not this Court's function to lay a record for the lawyers involved in this case.

*In re Tyrone F. Conner Corp.*, 140 B.R. at 782; *see also In re Scott*, 182 B.R. 31, 32 n. 2 (Bankr.W.D.Ark.1995) (party who asks the court to take judicial notice of court file must generally supply the information or documents to be noticed); Fed.R.Evid. 201(d). In other words, invocation of Fed. R.Evid. 201(d) does not relieve a party of the duty to gather, organize, and present evidence to the court.[8]

■ The court also rejects Simonetti's related argument that, on a motion for summary judgment in an adversary proceeding, the record includes not only the documents filed in the adversary proceeding, but also the documents filed in all related base case files. Continuing the argument, Simonetti states that the court must search the entire record, including the record in related cases and proceedings. Although the court agrees that it has the duty to search the record, for a variety of reasons the "record" in an adversary proceeding is far less encompassing than Simonetti contends.

■ An adversary proceeding, though related to a base case, is a separate judicial proceeding, distinct from the collective proceeding referred to in bankruptcy parlance as the "case" or "base case."

---

7. At the conclusion of the oral argument, Simonetti's counsel stated that the court "need only look at the specific orders and pleadings that I've referred to, as well as the docket sheet in the course of this argument." Tr. at 72.

8. Nor does the taking of judicial notice automatically establish the admissibility of evidence. *See generally United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir.1994) (discussing

judicial notice of prior court order). Rather, judicial notice has the far more limited function of expediting proof of adjudicative facts that are by their nature not subject to dispute, "simplifying the process of authenticating documents which would generally require certification under FRE 901 and 902, and overcoming FRE 1002 best evidence problems...." Barry Russell, *Bankruptcy Evidence Manual* § 201.5 (1998).

*Barber v. Production Credit Services of West Central Illinois (In re KZK Livestock, Inc.),* 221 B.R. 471, 475 n. 3 (Bankr. C.D.Ill.1998) (*citing In re Southern Indus. Banking Corp.,* 189 B.R. 697 (E.D.Tenn. 1992)). Therefore, the record of an adversary proceeding, like the proceeding itself, is distinct from the record in the base case. *In re KZK Livestock, Inc.,* 221 B.R. at 475.

Moreover, because the Eleventh Circuit requires trial courts to consider the entire record on a motion for summary judgment, not just those documents "singled out by counsel for special attention,"[9] accepting Simonetti's extravagant definition of "the record" would impose an unwarranted and impossible burden on bankruptcy courts in this Circuit, especially in cases, such as the present, involving multiple chapter 11 filings, related entities, and voluminous base case dockets. Accepting Simonetti's definition of the record would force the court to consider countless irrelevant documents—unrelated proofs of claims and objections thereto, fee applications, periodic financial reports, etc.—all without any conceivable relationship to the pending motion. And, as explained in *KZK Livestock,* expanding the record as suggested by Simonetti would also put the litigants at risk, because, given the voluminous filings in related proceedings, the court "might well draw inferences from the facts unanticipated by either party." *In re KZK Livestock, Inc.,* 221 B.R. at 476. With such an expansive definition of the record, and given the court's duty to search it, a court could easily undermine the adversary process by usurping the role of counsel.

Although the court is required to search the record when considering this Summary Judgment Motion, that record does not include the record in Hillard's main bankruptcy case, or, for that matter, the 1990

cases. *Id.* ("Courts do not search outside a record in order to notice documents in another case, even where the same parties are involved, unless the proceedings are put in evidence."). This judge does not have the hundreds of hours it would take to comb through the court files in the various base cases to build an argument on Simonetti's behalf against the requested summary judgment. Simonetti's request that this judge do so is ridiculous.

■ As for Simonetti's contention that it did not have to respond to the Summary Judgment Motion because the motion was not supported by an affidavit, discovery materials, or certified copies of records, Simonetti waived any such defects by failing to raise them at the hearing. *Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d 1013, 1016 (11th Cir.1987) ("if evidence otherwise inadmissible provoked no timely objection, it could and, if material, should be factored into a summary judgment decision"); *Munoz v. International Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators,* 563 F.2d 205, 214 (5th Cir.1977) (same). Simonetti's objection to the form of the Summary Judgment Motion was waived.

■ Finally, the court spurns Simonetti's excuses for failing timely to serve any opposition to the Summary Judgment Motion. The gist of Simonetti's excuse is that certain court records were not available in advance of the May 25, 1999 hearing. According to Simonetti's paralegals, Simonetti's counsel did not instruct them to begin gathering documents until May 20, 1999. *See* Affidavit of Mary Susan Kenney at ¶ 2 (C.P.29); Affidavit of Carol J. Miller at ¶ 2 (C.P.32). Indeed, Ms. Miller states that she went to the Bankruptcy Court Clerk's office on Friday, May 21, 1999—two busi-

---

9. *See Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980) ("Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention—the court must consider both before granting a summary judgment.") *and Clinkscales v. Chevron U.S.A., Inc.,* 831

F.2d 1565, 1570 (11th Cir.1987) (same); *but see Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996) (Rule 56 does not require trial court to "survey the entire record in search of evidence to support a non-movant's opposition").

ness days before the scheduled hearing—to obtain the documents. *Id.* It was therefore predictable that Simonetti might encounter problems obtaining the documents.

Although Simonetti's counsel recounts his busy schedule during the week before the hearing, he fails to adequately explain his delay in responding to the Summary Judgment Motion, given that the motion was served on May 7, 1999.[10] Moreover, Simonetti's counsel did not even allude to these supposed difficulties at the hearing on May 25, 1999. Instead, he instructed the court to take judicial notice of various base case dockets and records, and argued the merits of the motion.

 In determining whether Simonetti's neglect in filing its opposition papers was excusable, the court considers all relevant circumstances surrounding the omission, including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *See Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993). Although the delay was relatively short, under the circumstances it had the effect of ambushing opposing counsel and the court. The court has already entertained lengthy oral argument based upon the record before it on May 25, 1999. In addition, it appears to the court that had Simonetti's counsel acted more promptly in attempting to obtain the necessary documents, they would have been available. The consequences of Simonetti's counsel's procrastination should not be foisted upon Hillard. Finally, based upon all circumstances and Simonet-

ti's counsel's statements on the record, as well as the papers submitted in support of the Nunc Pro Tunc Motion, the court is not persuaded that Simonetti has acted in good faith.

Accordingly, the court declines to characterize Simonetti's neglect as excusable, and therefore refuses to consider the untimely papers submitted in opposition. *Cf. Clinkscales,* 831 F.2d at 1568 ("Absent an affirmative showing ... of excusable neglect according to Fed.R.Civ.P. 6(b), a court does not abuse its discretion in refusing to accept out-of-time affidavits."). The court will therefore enter a separate order denying Simonetti's Nunc Pro Tunc Motion.

## IV. DISCUSSION REGARDING THE SUMMARY JUDGMENT MOTION

### A. Summary Judgment Standards.

Having delineated and reviewed the materials which constitute the summary judgment record, this court shall consider the merits of Hillard's motion. Under Fed. R.Civ.P. 56(c), made applicable herein by Fed.R.Bankr.P. 7056,

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

Fed.R.Civ.P. 56(c). In the leading procedural decision regarding Rule 56, the United States Supreme Court explains that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its mo-

---

**10.** Neither the Summary Judgment Motion, nor the grounds in support, could have come as a surprise to Simonetti, because the grounds for the motion were set forth in the Motion to Dismiss. Besides, the Summary Judgment Motion was discussed at a conference with the court on April 27, 1999 as a

procedural mechanism to get the court to consider matters outside the four corners of the complaint. *See* Transcript of Rehearing on April 27, 1999 at 10 (C.P.19). Simonetti had ample time to attempt to assemble a proper record.

tion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). After the moving party has met this initial burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Although Fed.R.Civ.P. 56(e), does not permit the adverse party to avoid summary judgment merely by resting on the pleadings, *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, it is equally true that a default in responding to a motion for summary judgment, unlike a default in responding to a complaint, does not entitle the moving party to judgment. *Compare* Fed.R.Civ.P. 55(b) *with* Fed.R.Civ.P. 56(c) & (e). This follows from the drastic nature of a motion for summary judgment,[11] and from the text of the Rule itself, which, as set forth above, permits the court to enter summary judgment only if the record shows both "that there is no genuine issue as to any material fact *and* that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). The last sentence of subsection (e), which requires the adverse party to respond to a motion for summary judgment, reinforces the point, stating that "[i]f the adverse party does not so respond [as provided in the Rule], summary judg-

ment, *if appropriate,* shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added). Summary judgment, in short, is neither a procedural shortcut nor a sanction for dilatory or sloppy litigants, and the court may properly deny a motion "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

In view of the foregoing, and given Simonetti's failure to timely and properly respond to the Summary Judgment Motion, the court must decide whether summary judgment is appropriate on the existing record.

Hillard basically advances two arguments in support of the Summary Judgment Motion. First, Hillard relies on the preclusive effect of the First Plan and several orders of the Honorable A. Jay Cristol with respect to the First Plan. Second, Hillard contends that Simonetti's request to enforce the terms of the First Plan is barred by the statute of limitations.

Before addressing these arguments, it is necessary to characterize the relief that Simonetti seeks through its Amended Complaint. In Counts I, III, IV, and V, Simonetti seeks declaratory relief determining the validity and extent of its secured claim in the Debtor's real and personal property, premised upon the First Plan;[12] in Count II, Simonetti seeks mandatory injunctive relief (essentially under 11 U.S.C. § 1142) requiring Hillard to execute various documents—again promised on the First Plan.

---

11. The Eleventh Circuit has noted that summary judgment, though a useful procedural device, is nonetheless "a 'lethal weapon' capable of 'overkill.' " *Useden v. Acker,* 947 F.2d 1563, 1573 (11th Cir.1991) (citations omitted), *cert. denied sub nom., Useden v. Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993); *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986) (urging courts to exercise caution in granting motions for summary judgment); *see also United States v. Feinstein,* 717 F.Supp. 1552, 1555 (S.D.Fla.1989) (noting that summary judg-

ment is an "extreme remedy which should not be granted, unless the moving party has established his right to judgment beyond controversy").

12. The declaration sought in Count I is based upon the res judicata effect of the First Plan; the declarations sought in Count III and IV are based upon the doctrines of equitable and judicial estoppel, respectively; the declaration sought in Count V is based upon an equitable lien theory. *See* Amended Complaint at ¶¶ 58–67 & 71–86 (C.P.22).

B. *Res Judicata and Collateral Estoppel Effect of First Plan and Related Orders.*

 Hillard contends that Judge Cristol's order confirming the First Plan, as amended, and subsequent orders interpreting the First Plan, preclude Simonetti from arguing that its claim is secured. Hillard crystalizes its argument as follows:

> In the prior case of Defendant [Hillard], the confirmed plan provided for a new loan and a new mortgage and promissory note. As such, and in accordance with the prior Orders of the Court of July 1994, no pre-petition loan documents survived the confirmation of the plan of reorganization of Defendant. Therefore, summary judgment must be granted and no claim can be made against Defendant.

*See* Defendant's Motion for Summary Judgment at 8 (C.P.20). Hillard thus relies upon the res judicata effect of Judge Cristol's Amended Order Confirming Amended Plan as Modified, dated July 30, 1992 (*see* Exh. A)[13] (hereinafter "Confirmation Order"), and the collateral estoppel effect of Judge Cristol's Order Denying Simonetti Development, Ltd.'s Motion for Rehearing or Reconsideration on Order on 1992 and 1993 Payments, dated July 2, 1994 (*see* Exh. F) (hereinafter "Skipped Payments Order"), and Order Denying Simonetti Development, Ltd.'s Motion for Rehearing or Reconsideration of Order on Recording Costs, Recording Taxes, and Title Insurance Premiums (*see* Exh. G) ("Recording Costs Order") (the latter two orders collectively referred to as "July 1994 Orders").

 As the Eleventh Circuit has explained, "[w]hile res judicata bars the relitigation of claims, collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir.1998). Therefore, to the extent that Hillard's argument is premised upon the Confirmation Order, Hillard is invoking the doctrine of res judicata—arguing in essence that Simonetti's pre-bankruptcy *claims* are barred by the First Plan. Simonetti's rights must be derived from the First Plan. There appears to be no controversy on this point: both parties are asserting their rights under the First Plan and relying upon its res judicata effect.

This court's reading of the First Plan, however, does not support Hillard's res judicata argument. Specifically, section 5.1 of the First Plan, as set forth in the Third Modification to Debtor–In–Possession's Amended Plan of Reorganization,[14] expressly provides that the claim of Simonetti's predecessor in interest is "fully secured," and that the new promissory note contemplated under the First Plan would be secured by *existing* mortgages:

> The new promissory note will be secured by all of the RTC liens and security interests including, without limitation, the first and second mortgages against the Pilgrim and Provident Nursing Homes, the security interest in the accounts receivable of the Pilgrim and Provident Nursing Homes, and the second mortgage against the Countryside Nursing Home owned by NCA–Buchanan, Inc.

*See* Third Modification at 2 (Composite Exh. A). Thus, although the Third Modification called for the creation of a new promissory note (which apparently was never done), it does not contain similar language calling for the execution of "new" mortgages and security agreements.[15]

---

13. Unless stated to the contrary, all further references to "Exh." refer to documents attached to Hillard's Summary Judgment Motion.

14. *See* Composite Exh. A (hereinafter "Third Modification").

15. Section 5.1 of the Fifth Modification to the Amended Plan of Reorganization (hereinafter "Fifth Modification"), although not attached to the Summary Judgment Motion, is set forth in the Amended Complaint at paragraph 38 (C.P.22). This Fifth Modification revises the principal amount of the new promissory note,

Rather, for purposes of ruling on the Summary Judgment Motion and honoring the requirement that the court draw reasonable inferences in favor of the non-moving party, the court interprets the First Plan as contemplating the continuation of prior liens, including the mortgages of the RTC subsequently transferred to Simonetti.[16]

Hillard's argument, however, does not rely simply on the First Plan, but is also assertedly supported by Judge Cristol's July 1994 Orders which, according to Hillard, conclusively interpreted the First Plan as precluding a finding by this court that Simonetti's claim is secured.[17] Specifically, Hillard argues that the *issue* of whether Simonetti's claim is secured was decided against Simonetti in those July 1994 Orders, wherein Judge Cristol wrote the following:

> There is nothing in the Debtor's Amended Disclosure Statement that gives rise to the argument of Simonetti Development Limited Partnership that the prepetition loan documents were in existence or would continue in existence.
>
> . . .
>
> There is nothing to indicate to the Court that the pre-petition loan documents were a part of the Plans of Reorganization, as amended and modified.
>
> . . .
>
> The Court has already found under § 1141 ... that the pre-petition loan documents are not in evidence nor contained within the four corners of the Debtor's Plan of Reorganization....

and contains language regarding security that is similar (though not identical) to that contained in the Third Modification. As Hillard relies on the Third Modification, so too will the court for purposes of this opinion.

16. The Amended Complaint alleges that after the confirmation of the First Plan, the RTC assigned the Pilgrim and Provident mortgages which had been previously executed in favor of the RTC's predecessor in interest. *See* Amended Complaint at ¶ 45 (C.P.22).

*See* Skipped Payments Order at ¶¶ 6–8 (Exh. F); *see also* Recording Cost Order at ¶ 3 (Exh. G).

■■■ In the Eleventh Circuit, as elsewhere, a party invoking the doctrine of collateral estoppel must show that,

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pleming,* 142 F.3d at 1359; *see also SEC v. Bilzerian (In re Bilzerian),* 153 F.3d 1278, 1281 (11th Cir.1998) (same, and noting that the burden of persuasion in the later proceeding cannot be significantly heavier than that in the prior proceeding); *Brandt v. Bassett (In re Southeast Banking Corp.),* 69 F.3d 1539, 1552 (11th Cir. 1995) (same, and noting that collateral estoppel applies to parties and those in privity).

Per this summary judgment record, notwithstanding Simonetti's failure to respond adequately, the court is unable to determine that Hillard has established the first three prerequisites to the application of the doctrine of collateral estoppel. As to the first element, Hillard is arguing that the issue of the nature of Simonetti's claim (*i.e.,* secured versus unsecured) is the same as the issue now before the court, and that Judge Cristol decided the issue against Simonetti. Drawing inferences in

17. Even if the court disagreed with Judge Cristol's interpretation of the First Plan, the court would nevertheless be bound to give Judge Cristol's July 1994 Orders whatever preclusive effect they would be entitled to under the doctrine of collateral estoppel, because the doctrine applies without regard to the correctness of the prior determination. As explained below, however, the court does not confront this situation.

favor of Simonetti, as the court must on a motion for summary judgment, it appears that the issue before Judge Cristol in July, 1994 concerned whether Simonetti's predecessor in interest (the RTC) agreed that certain missed payments from 1992 and 1993 would be added to the end of the new promissory notes and were thus not in default. *See* Skipped Payments Order at ¶ 3 (Exh. F). This has nothing to do with whether the RTC's lien continued under the First Plan. In that same order, Judge Cristol remarks that "there was no competent evidence before the Court to show that the findings of fact made by the Court *with regard to the amounts due* from the Debtors to the [RTC] are in error." *See id.* at ¶ 4 (emphasis added). This paragraph strongly suggests that the amount of the debt, rather than nature of the debt as secured or unsecured, was the issue before Judge Cristol. Paragraph 2 of the Recording Costs Order suggests that the issue before Judge Cristol pertained to who was responsible for paying certain *recording costs, recording taxes,* and title insurance premiums—all of which, this court infers, pertained to Simonetti's mortgages. If, as Hillard argues, Judge Cristol had decided in the Recording Costs Order that Simonetti's claim were unsecured, it would have been unnecessary for him to decide who was obligated to pay those expenses.[18]

Accordingly, drawing inferences in favor of Simonetti based upon the July 1994 Orders, it appears that Judge Cristol prevented Simonetti from referring to prepetition loan documents to challenge the court's prior determination of the amount of the debt. The nature of the debt as secured or unsecured was not at issue. Thus, it also appears that the issues in the prior and present proceedings are not identical. Moreover, it seems clear that

the issue of the *nature* of Simonetti's claim (as opposed to the *amount* of the claim), may not have been actually litigated before Judge Cristol. Given the current summary judgment record, to the extent that Hillard relies upon the collateral estoppel effect of the July 1994 Orders, or the res judicata effect of the Confirmation Order and the First Plan, the court must deny the Summary Judgment Motion.

### C. Statute of Limitations and Accrual of Rights For Actions to Enforce Confirmed Plan.

Hillard asserts a novel statute of limitations defense to Simonetti's request to enforce the First Plan. Because the court has not found any reported case involving a statute of limitations defense to the enforcement of a confirmed plan of reorganization, the court must jump into the chapter 11 postconfirmation mudpit. Fortunately, the court has high waders. Federal courts regularly slough through statutes in which Congress has failed to supply important elements, such as a statute of limitations.

At the outset, the issue is whether there is a statute of limitations applicable to the enforcement of rights under a confirmed chapter 11 plan. Hillard contends that there is a limitation period. Simonetti contends there is not.

As noted above, Simonetti seeks declaratory and injunctive relief with respect to the effect of the First Plan. Insofar as Simonetti seeks an order compelling Hillard to execute the new promissory note and mortgage documents, the request appears to fall squarely within the ambit of section 1142 of the bankruptcy Code[19] which provides in relevant part as follows:

> The court may direct the debtor ... to execute or deliver ... any instrument

---

18. Judge Cristol's comment to the effect that "the provisions of those pre-petition loan documents are not in evidence" suggests that Simonetti then, as now, failed to present an adequate record to the court. *See* Recording Costs Order at ¶ 3.

19. The Bankruptcy Code, as amended, is set forth as 11 U.S.C. §§ 101–1330. Unless otherwise noted, all further statutory references are to Title 11 of the United States Code.

required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act ... that is necessary for the consummation of the plan. 11 U.S.C. § 1142(b). The question becomes whether there is a statute of limitations for relief under section 1142. Simonetti argues that, unlike sections 1143 and 1144 which provide time limits for actions under those sections, section 1142 contains no such limitation. Noting that Congress knew how to prescribe a limitation period elsewhere in chapter 11, Simonetti concludes that, by omitting such a limitation in section 1142, Congress intended that no limitation period apply to actions to enforce a confirmed plan, even after substantial consummation. *See* Tr. at 57. Presumably, then, any prejudice resulting from delay in enforcing one's rights under a confirmed plan would be analyzed under the equitable doctrine of laches.

Although Simonetti's argument is not without some logical and practical appeal, the court is constrained to reject it as contrary to the settled practice of the federal courts that have confronted the "commonplace" void created by the failure of Congress to specify a limitation period. *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985); *see also North Star Steel Co. v. Thomas,* 515 U.S. 29, 33, 115 S.Ct. 1927, 1930, 132 L.Ed.2d 27 (1995) ("A look at this Court's docket in recent years will show how often federal statutes fail to provide any limitations period for the causes of action they create ...."); *DelCostello v. International*

*Brotherhood of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2286, 76 L.Ed.2d 476 (1983) ("As is often the case in federal civil law, there is no federal statute of limitations expressly applicable to this suit.").[20]

Encountering a statute of limitations void such as that in section 1142, courts "do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source," either federal or state law. *DelCostello,* 462 U.S. at 158, 103 S.Ct. at 2287.

Conceptually, before the court determines to "borrow" a limitation period, it must decide whether the rights that Simonetti asserts have a federal or state law origin. If the rights are federal in character, the court "borrows" a limitation period; if the rights have their origin in state law, the court must directly apply state law as the "rule of decision." *See* 28 U.S.C. § 1652 (Rules of Decision Act); *DelCostello,* 462 U.S. at 159 n. 13, 103 S.Ct. at 2288 n. 13 (explaining that, with respect to federal causes of action, courts borrow state law "as a matter of interstitial fashioning of remedial details under the respective substantive federal statutes, and not because the Rules of Decision Act or the Erie doctrine requires it.").

Although a confirmed plan of reorganization is often compared to a contract (a traditional creature of state law), and although some courts describe it as such,[21] this court nevertheless concludes

---

**20.** Congress has enacted a four-year "catchall" limitation period for civil actions "arising under an Act of Congress" enacted after December 1, 1990. *See* 28 U.S.C. § 1658. Because section 1142 of the Bankruptcy Code was enacted prior to December 1, 1990, the four-year period does not, by its own terms, apply to Simonetti's adversary proceeding. *But see* Abner J. Mikva and James E. Pfander, *On the Meaning of Congressional Silence: Using Federal Common Law to Fill the Gap in Congress's Residual Statute of Limitations,* 107 Yale L.J. 393 (1997) (urging courts to adopt 28 U.S.C. § 1658 as the residual, feder-

al statute of limitations for statutes enacted prior to December 1, 1990).

**21.** *See, e.g., In re Sergi,* 233 B.R. 586, 589 (1st Cir. BAP 1999) (confirmed plan is a "binding contract," *citing In re Sugarhouse Realty, Inc.,* 192 B.R. 355, 362 (E.D.Pa.1996)); *In re Offshore Diving & Salvaging, Inc.,* 226 B.R. 185, 188 (Bankr.E.D.La.1998) ("chapter 11 plan is a contract"); *In re Campesinos Unidos, Inc.,* 219 B.R. 886, 888 (Bankr.S.D.Cal.1998) (describing plan as "the reorganized debtor's new contract with its creditors"); *Carter v. People's Bank and Trust Co. (In re BNW, Inc.),* 201 B.R. 838, 849 (Bankr.S.D.Ala.1996) (post-

that a chapter 11 plan confirmation order, and obligations arising thereunder, are necessarily federal in character. A confirmed plan of reorganization is a creature of the Bankruptcy Code, a comprehensive federal remedial statute. Although obviously a confirmed plan is often the fruit of negotiations tantamount to contractual bargaining, the contents of a plan (both mandatory and permissive), the requirement of judicial approval, and the manner in which the parties obtain that approval, are all governed by federal law, *i.e.* the Bankruptcy Code. *See generally* 11 U.S.C. §§ 1121–1129. Moreover, federal law provides for the implementation of the plan, 11 U.S.C. § 1142, and treats a confirmed plan as a federal judgment[22] entitled to res judicata effect. *See, e.g., Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544 (11th Cir.) (confirmation order entitled to res judicata effect), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990); *Marine Midland Business Loans, Inc. v. Miami Trucolor Offset Service Co.,* 217 B.R. 341, 348 (S.D.Fla.1998) (confirmation order is "a final judgment on the merits"); Fed. R.Bankr.P. 9001(7) (defining "judgment" as "any appealable order"); *cf. United States v. Kellum,* 523 F.2d 1284 (5th Cir. 1975) (consent decree treated as a judgment, and not a contract, for statute of limitations purposes). Although many courts *construe* the terms of a plan in accordance with State contract interpretation principles, reorganization plans, by virtue of the orders confirming them, are regarded as judgments of the federal courts. *See Official Creditors' Committee of Stratford of Texas, Inc. v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.),* 635 F.2d 365 (5th Cir.1981) (Judge Anderson, writing for a unanimous panel, states that a confirmed arrangement is tantamount to consent judgment, but construed as contract); *see also Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir.1993) (*citing Stratford* and holding that state contract interpretation principles constitute federal rule of decision for interpreting confirmed plan); *In re Beta Int'l, Inc.,* 210 B.R. 279 (E.D.Mich.1996) (*citing Stratford* regarding contract interpretation).[23] Accordingly, because this court characterizes Simonetti's claim for determination of its rights under the First Plan as enforcement of a bankruptcy court judgment, and therefore essentially federal in origin,[24] it becomes necessary to borrow a limitations period to fill in the gaps in the applicable federal law.

confirmation debtor "operates pursuant to its corporate charter and the contract established with its creditors in its plan of reorganization").

22. As an appealable order, a chapter 11 confirmation order is a "judgment" under the applicable federal rules. *See* Fed.R.Bankr.P. 9001(7).

23. This court notes that although a confirmed plan may, in some circumstances, resemble a consent judgment, this is not universally true. For example, when the court confirms a plan over the non-acceptance of a class of creditors, the plan could hardly be characterized as a consent judgment, at least not with respect to that class of creditors. *See* 11 U.S.C. § 1129(b) (cram down). More generally, the court suspects that many, if not most, creditors (even those voting to accept a plan of reorganization) would prefer to avoid bankruptcy proceedings altogether. The reference to "consent judgment" in the cases may be a useful analytical aid, but should not be accorded too much significance. The bottom line is that a federal judgment is imposed upon all parties in interest when a plan is confirmed. 11 U.S.C. § 1141(a); Fed. R.Bankr.P. 9001(7) & 9021.

24. By characterizing Simonetti's rights as arising under federal law, the court in no way suggests any limitation on the power of a state court to hear a civil proceeding to enforce a confirmed chapter 11 plan, particularly given Congress's recognition of the concurrent jurisdiction of state courts. 28 U.S.C. § 1334(b). Indeed, a bankruptcy court may properly abstain from exercising postconfirmation jurisdiction in appropriate circumstances. *See* 28 U.S.C. § 1334(c)(1); 1 William L. Norton, Jr., *Bankruptcy Law & Practice 2d* § 4:48, at 4–315 (1997).

■ Although courts do not invariably borrow state limitation periods, for example when the application of a state limitation period would frustrate federal policy,[25] there is a "particularly strong" presumption in favor of borrowing state law "in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 98, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991); *United Paperworks Int'l, Local No. 395 v. ITT Rayonier, Inc.*, 931 F.2d 832, 835 (11th Cir.1991) (assuming that the "general rule of borrowing state statutes of limitation applies" unless federal law provides closer analogy or unless federal policies otherwise require). The debtor-creditor relationship is a relationship long grounded upon state law expectations. Furthermore, as noted above, courts routinely construe chapter 11 plans by utilizing state contract principles. Applying a state limitation period, by analogy, makes great sense. *Cf. Hillis Motors*, 997 F.2d at 588. *Therefore, the court rejects Simonetti's assertion that there exists no statute of limitations to enforce the terms of a chapter 11 confirmed plan.*

The question next becomes, which limitation period to apply? The parties have proposed several answers. Citing the Eleventh Circuit's recent decision in *Balfour Beatty Bahamas, Ltd. v. Bush*, 170 F.3d 1048 (11th Cir.1999), Hillard characterizes Simonetti's adversary proceeding as an action to enforce a federal judgment, subject to Florida's five-year statute of limitations for federal judgments. *See* Fla.Stat.Ann. § 95.11(2)(a). Hillard also suggests the five-year period applicable to actions on a written instrument (*id.*

§ 95.11(2)(b)), the one-year period applicable to specific performance of a contract (*id.* § 95.11(5)(a)), or the four-year period applicable to equitable or other actions (*id.* 95.11(3)(k) & (3)(p)). Simonetti, in contrast, suggests the five-year period applicable to the foreclosure of certain mortgage liens (*id.* § 95.281(1)(a)), or the five year period applicable to actions on a written instrument (*id.* § 95.11((2)(b))—as tolled by *id.* § 95.051(1)(f)) (statute of limitations for action on written instrument is tolled by the "payment of any part of the principal or interest").

■ Hillard and Simonetti are correct to argue by analogy because the court's task is to "determine the essential nature of the claim under federal law and then focus on the period applicable to such a claim under the most analogous state law claim." *Musick v. Goodyear Tire & Rubber Co.*, 81 F.3d 136, 137 (11th Cir.), *cert. denied*, 519 U.S. 965, 117 S.Ct. 389, 136 L.Ed.2d 305 (1996); *cf. Wilson*, 471 U.S. at 268, 105 S.Ct. at 1942–43 (to select which state limitation period to borrow, court must "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle"); *Vigman v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455, 459 (5th Cir.1981) (federal court must "apply the forum state's limitations period applicable to the state cause of action that bears the closest substantive resemblance to the federal cause of action").[26]

■ Although the court agrees with Hillard that a confirmed plan, and the order confirming and incorporating it,

**25.** *See, e.g., DelCostello*, 462 U.S. at 161–62, 103 S.Ct. at 2289 (declining to borrow state limitation period for employee's action for breach of collective bargaining agreement and duty of fair representation under the Labor Management Relations Act); *cf. Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000, 104 L.Ed.2d 582 (1989) ("Courts thus should not unravel state limitations rules un-

less their full application would defeat the goals of the federal statute at issue.").

**26.** As to whether laches might apply, in Florida that equitable doctrine may only be used to shorten a prescribed limitation period, not to enlarge it. *See* Fla.Stat.Ann. § 95.11(6).

qualify as a "judgment,"[27] it does not follow that Simonetti's action to enforce the First Plan is tantamount to an action to collect a *money* judgment, as in the *Balfour Beatty Bahamas* case. Given the court's duty to "characterize the essence of the claim" for purposes of borrowing a limitations period, and given the multiplicity of potential claims that can arise under any single confirmed plan, it is unreasonable to treat every civil action to enforce a provision in a confirmed plan as if it were an action to enforce a particular type of judgment—and subject to a single limitation period. A simple hypothetical situation will serve to illustrate this point.

We could assume, for example, that a confirmed chapter 11 plan gives one creditor (perhaps an administrative tort claimant) the right to receive a lump sum payment upon the effective date of the plan. That plan also gives a second creditor the right to receive interest-only payments for six years, with the full principal due in a lump sum payment at the end of six years. Under the same plan, a third creditor is entitled to the transfer of a specific parcel of real property from the reorganized debtor upon the effective date of the plan.

Continuing the hypothetical, if the unpaid tort creditor sought a writ of execution or other post-judgment relief to collect the lump sum payment, such action would indeed resemble an action to enforce a federal money judgment (as in the *Balfour Beatty Bahamas* case), which must be commenced within five years, presumably measured from the entry of judgment,[28] under Fla.Stat.Ann. § 95.11(2)(a). Imposing or borrowing the statute of limitations for enforcement of money judgments would seem to make sense in this situation.

As to the second hypothetical creditor, assume that the reorganized debtor timely made all interest-only payments for five years, but then ceased making interest payments and failed to make the balloon principal payment as well. Under the hypothetical plan, the debtor was not obligated to repay the principal balance until six years after confirmation, but the default in making the interest-only payments occurred approximately five years after confirmation. Under these facts, it would be unfair and unreasonable to hold that the five-year statute of limitations applicable to money judgments barred the collection of the unpaid interest and the ballooned principal obligation.[29]

If the hypothetical debtor failed to timely transfer the real estate to the third creditor, it would seem that an action for specific performance, or an action under section 1142 of the Bankruptcy Code, would be appropriate. It again would not be reasonable to borrow the statute of limitations applicable to money judgments as the proper time bar to enforce this type of right. It may be rational to apply a different limitation period to an action to compel transfer of real property, even though the right to recover the real property is set forth in a confirmed reorganization plan. Florida, at least, has prescribed different limitation periods for these different rights. *Compare* Fla.Stat.Ann. § 95.11(2)(b) (action on a federal judgment) *with id.* § 95.12 (real property actions).

This summary judgment record does not permit the court to accurately characterize Simonetti's rights under the First Plan. This court is therefore unable to select a

---

27. *See* Fed.R.Bankr.P. 9001(7) (definition of judgment).

28. Or, perhaps the limitation period commences upon the effective date of the plan when the first creditor's right to collect the money became enforceable. *But see infra* at 875–876 (discussion of federal accrual rule).

29. This part of the hypothetical raises the issue of the accrual of a cause of action under a plan, an issue which, as explained below, affects the court's ruling on this motion. *See, e.g., In re Whittaker,* 177 B.R. 360 (Bankr. N.D.Fla.1994) (under Florida law, the limitation period to enforce a written instrument is five years; upon default on an installment, limitation period begins to run).

limitation period from the array of possible choices. To the extent that Simonetti seeks a mandatory injunction compelling Hillard to execute certain documents, the action would seem to be analogous to one for specific performance of a contract: Simonetti is attempting to hold Hillard to its "agreement" to execute postconfirmation loan documentation. Alternatively, Simonetti seems to contend that specific performance is unnecessary given the res judicata effect of the First Plan;[30] Simonetti merely seeks a declaration to this effect. Under this type of theory, Simonetti's claim would appear to be analogous to an action for declaratory relief with respect to a prior judgment[31] or written instrument.[32] It must be emphasized that actions for declaratory relief are generally barred to the same extent that the applicable statute of limitations bars the underlying legal remedy. *Algrant v. Evergreen Valley Nurseries Ltd. Partnership*, 126 F.3d 178, 181 (3d Cir.1997) (collecting cases). As can be seen from this discussion, absent a more complete factual record, there exists considerable uncertainty about which limitations period to apply.[33]

The court shall also refrain, given the state of the record, from deciding any issues regarding possible tolling of the statute of limitations. *See Hardin*, 490 U.S. at 539, 109 S.Ct. at 2000 (noting that a limitation period is interrelated with tolling questions, and cautioning that, when borrowing state limitation periods, courts should not "unravel state limitation rules unless their full application would defeat the goals of the federal statute at issue").

■■■■ Even if the court were able to select an appropriate limitation period and resolve any doubts about tolling, the court would still be constrained to deny the Summary Judgment Motion because Hillard has not conclusively established when Simonetti's cause of action accrued. Because the court views Simonetti's. causes of action as arising under the Confirmation Order (which confirmed the First Plan) and therefore federal in character, the federal rule of accrual applies, irrespective of which limitation period applies. *See Vigman v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455, 458–59 (5th Cir.1981); *Beasley v. Alabama State University*, 966 F.Supp. 1117, 1128 (M.D.Ala.1997). A federal court will only borrow as much state law as is necessary to fill in the gaps in the federal law and, because there is an estab-

---

**30.** The First Circuit's Bankruptcy Appellate Panel, in a recent case not cited by either party, strongly suggests that a debtor's failure to issue "reorganization notes" where the plan contemplated that the creditor would retain its lien does not render the creditor's claim unsecured in a subsequent bankruptcy proceeding. *See In re Sergi*, 233 B.R. 586 (1st Cir. BAP 1999); *see also In re Eways*, 62 B.R. 616, 618 (Bankr.M.D.Fla.1986) ("This Court is satisfied that the Debtor's refusal to execute a note in the appropriate amount pursuant to the terms of the Plan should not preclude the Bank from enforcing its pre-petition claim, particularly in light of the specific provision in the Plan which clearly preserved the Bank's judgment lien."). Although the court finds the *Sergi* case highly persuasive, the present record is too skeletal to rule for Simonetti, nor has Simonetti requested such relief by appropriate motion.

**31.** *See Hollywood Lakes Section Civic Ass'n v. City of Hollywood*, 676 So.2d 500 (Fla.Dist.Ct. App.1996) (applying four year "catch-all" pe-

riod of Fla.Stat.Ann. § 95.11(3)(p) to action seeking declaratory relief regarding effect of prior judgment).

**32.** *See* Fla.Stat.Ann. § 95.11(2)(b).

**33.** *See* Abner J. Mikva and James E. Pfander, *On the Meaning of Congressional Silence: Using Federal Common Law to Fill the Gap in Congress's Residual Statute of Limitations*, 107 Yale L.J. 393, 394 (1997) ("When, as often happens, a good many analogous state statutes present themselves, federal judges must make a choice from among possible alternatives."). It is worth noting that careful drafting of a plan of reorganization, with an eye towards possible enforcement issues such as presented herein, could reduce or eliminate the uncertainty. *Cf. Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir.1998) (noting that ERISA does not provide a limitation period, and upholding parties' agreement as to applicable limitation period).

lished federal rule for accrual, there is no need to borrow Florida's accrual rules. *See* Fla.Stat.Ann. § 95.031 ("A cause of action accrues when the last element constituting the cause of action occurs.").

The general federal rule for accrual is that a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of the complaint. This is referred to as the "discovery rule," and it generally applies to federal claims where Congress has not provided a statute of limitation. *See White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1435 (11th Cir.1997) (noting that the 11th Circuit has adopted the discovery rule where Congress has failed to enact a statute of limitations); *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir.1990) (discovery is general federal rule of accrual); *Beasley*, 966 F.Supp. at 1128. Application of the federal rule could affect the outcome of this case, because the Florida accrual rule might result in a commencement of the limitation period before Simonetti knew or had reason to know of its injury. Moreover, application of the federal rule (with its emphasis on "knowledge" or "reason to know") raises issues of fact not necessarily relevant to accrual under the Florida rule—issues that the court cannot resolve on the present record.

The current record makes it impossible, on Hillard's Summary Judgment Motion, to determine when Simonetti's claim or claims accrued, given the factual question of when Simonetti knew, or should have known, about its injury or injuries. For example, the court might later be persuaded that Simonetti was not injured until Hillard ceased making payments, or perhaps at some earlier date upon a non-monetary default under the RTC's preconfirmation loan documents.[34] On the other hand, Simonetti's injury (and its discovery) may have occurred wall in advance

of the default in making payments, perhaps when Hillard first refused to execute a postconfirmation promissory note, thereby resulting in the accrual of Simonetti's cause of action. The answers to these types of questions must await the development of a fuller record.

## V. CONCLUSION

Because the record is undeveloped, the court cannot determine whether or to what extent Hillard is bound by the preconfirmation loan documents upon which Simonetti relies. Nor, for that matter, does the record permit the court to conclude that Simonetti is estopped from relying on these documents. It is also now impossible to ascertain when Simonetti's causes of action accrued and which limitation period or periods should establish the deadline for enforcing its rights under the First Plan.

For the foregoing reasons, the court will enter an order denying Hillard's Summary Judgment Motion and denying Simonetti's Nunc Pro Tunc Motion.

---

**34.** The record is bare as to whether any nonmonetary default under any presumably continuing RTC mortgage occurred, and whether Simonetti was obligated to institute an action in response to such defaults under the terms contained in any such mortgage.