635 F.2d 365
 7 Bankr.Ct.Dec. 813
 In re STRATFORD OF TEXAS, INC., et al., Debtors.
The OFFICIAL CREDITORS COMMITTEE OF STRATFORD OF TEXAS,
INC., Etc., Appellants,
v.
STRATFORD OF TEXAS, INC., Class III Creditors Subcommittee
of the Official Creditors Committee, Collins
Electric Co., Inc., Appellees.
 No. 79-2129.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 26, 1981.
 
 Ross, Banks, May, Cron & Cavin, Daniel H. Johnston, Jr., Robert R. Kamm, Houston, Tex., for appellants.
 Sheinfeld, Maley & Kay, Frank R. Monroe, David B. Foltz; Jr., Houston, Tex., for Collins Elec. Co.
 Appeal from the United States District Court for the Southern District of Texas.
 Before HILL, RUBIN and ANDERSON, Circuit Judges.
 R. LANIER ANDERSON, III, Circuit Judge:
 
 
 1
 The appellant, a subcommittee of creditors of Stratford of Texas and its subsidiaries in a Chapter XI bankruptcy proceeding,[1] appeals from a determination of the district court that the appellee, Collins Electric Co., Inc. ("Collins"), is a Class 4 rather than a Class 3 creditor as defined in the "Consolidated Plan of Arrangement" adopted by a majority of the creditors on June 6, 1977. The determination allows Collins a larger dividend from the proceeds of the disposition of the debtors' assets with a concomitant decrease in the size of the appellant's dividend than was the alleged intention of the drafters of the plan of arrangement. We hold that the district court's interpretation of the arrangement was erroneous and reverse.
 
 
 2
 Stratford of Texas was a diversified agricultural conglomerate. A substantial aspect of its operation was its cattle program. Stratford solicited investments to purchase, raise and sell cattle. The investor was guaranteed a minimum return on his investment as well as certain immediate tax benefits. The investment was evidenced by cattle services contracts. Collins had invested in several cattle programs over the years. The most recent contract matured in late October, 1976, but Stratford, hampered by serious cash flow problems, was unable to repay the investment at that time. Collins agreed to cancel the cattle services contract and to accept a promissory note as a means of deferring payment of the money owed under the cattle services contract. Stratford executed a non-negotiable promissory note in the principal amount of $398,490 plus nine percent interest in favor of Collins. The note was secured by collateral and was guaranteed by two of Stratford's subsidiaries, Delta Industries, Inc. and Sherman County Feedyard, Inc.
 
 
 3
 Stratford, by and through its subsidiaries, notably the Green Thumb Corporation and Green Thumb Products Corporation, also operated substantial floriculture operations. These operations possessed substantial assets and, unlike the cattle operation, the floriculture operations were conventionally financed and most of their indebtedness was to trade creditors, i. e., suppliers of goods and services for these operations. Stratford, in contrast, had few trade creditors and most of its debt was in cattle services contracts.
 
 
 4
 In January 1977, the various debtor companies filed a Chapter XI bankruptcy proceeding. As contemplated by the old Bankruptcy Act, the creditors organized into committees to formulate an arrangement for the disposition of the assets and the disbursement of the proceeds. The initial proposal was that the cattle investors and the trade creditors should be treated equally; however, the trade creditors resisted equal treatment, and insisted upon dual treatment of trade creditors and cattle investors. The creditors committees finally resolved to create four categories of creditors.[2] The first two categories consisted of priority claims and unsecured claims of $1,000 or less respectively. Class 3 consisted of "(a)ll Unsecured Claims not included in Class 2 which are (i) held by any party to a cattle services contract with, or any similar agreement providing for the care and feeding of cattle by, any Debtor or by a limited partner in any partnership in which any Debtor is or was a general partner or (ii) held by The Paul Revere Life Insurance Company." Class 4 consisted of "(a)ll Unsecured Claims not included in Class 2 or Class 3." Thus, most of the trade creditors fell within Class 4. Two separate funds were to be created to pay Class 3 and Class 4 debts. It was estimated that Class 3 creditors (cattle investors) would receive about thirty-five cents on the dollar and Class 4 creditors (trade creditors) would receive about fifty-eight cents on the dollar. Those estimates, however, were based on the assumption that Collins was a Class 3 (cattle investor) creditor.[3] The creditors committees and debtors prepared solicitation material containing these payment projections and mailed the materials to all the creditors. The plan was accepted on June 1, 1977, by a majority in number and amount of unsecured creditors.[4] On June 6, 1977, the bankruptcy court confirmed the plan. It appears from the record that Collins accepted the plan, but along with its acceptance, it stated that its claim fell within Class 4.
 
 
 5
 Upon discovering that Collins considered itself to be a Class 4 creditor, the debtors filed an application in the bankruptcy court to require Collins to show cause why the unsecured portion of its claim[5] should not be placed in Class 3. Collins opposed the application, arguing that its claim was based upon a promissory note and not upon a cattle services contract. The bankruptcy court and district court agreed. Even though Collins' claim originated in a cattle services contract, the lower courts gave a literal interpretation to the plan and held that Collins' note represented a general unsecured claim in excess of $1,000, thereby placing the claim in the residual class of claims, i. e., Class 4. The issue on appeal is whether the definition of Class 3 creditors in the plan of arrangement is ambiguous so as to allow extrinsic evidence of the intent of the parties to the plan and, if so, the proper interpretation of the plan in light of the extrinsic evidence.
 
 
 6
 The bankruptcy court, district court and parties on appeal have taken the position that the arrangement is like a contract and subject to contract rules of construction and interpretation. Indeed the lower courts held that the Texas parol evidence rule foreclosed consideration of other evidence which would vary the unambiguous language of the arrangement. The confirmed arrangement, however, is tantamount to a judgment of the bankruptcy court. See Bizzell v. Hemingway, 548 F.2d 505 (4th Cir. 1977). Nevertheless, the arrangement represents a kind of consent decree which has many attributes of a contract and should be construed basically as a contract. See Eaton v. Courtaulds of North America, Inc., 578 F.2d 87 (5th Cir. 1978).
 
 
 7
 A question of contract interpretation, including the determination of whether a contract is ambiguous in order to permit extrinsic evidence of intent, is a question of law. Consequently, we are not bound by the clearly erroneous standard of review, Fed.R.Civ.P. 52(a), on the question of ambiguity. See Eaton v. Courtaulds of North America, Inc., supra. Ordinarily, we should glean the contract's meaning without resorting to extrinsic evidence in accordance with the principle that the language of an agreement, unless ambiguous, best represents the intention of the parties. Id.; Kimbell Foods, Inc. v. Republic National Bank, 557 F.2d 491 (5th Cir. 1977), affirmed 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Where ambiguity exists, we may turn to other aids of construction such as extrinsic or parol evidence to establish the true intention of the parties; however, the determination of the parties' intent from extrinsic evidence is a question of fact rather than one of law. See Fujimoto v. Rio Grande Pickle Co., 414 F.2d 648, 654 (5th Cir. 1969).
 
 
 8
 We first address the question of whether the definition of Class 3 creditors is ambiguous. Collins argues that the use of the present tense-all claims that "are ... held by any party to a cattle services contract"-clearly fixes the status of the parties as of some date after Collins exchanged the cattle services contract for the note. At that time, Collins was not a party to a cattle services contract and did not fall into Class 3. We do not share Collins' conviction that the language is free of ambiguity. In determining whether the disputed language is latently ambiguous, we may consider negotiations and other circumstances surrounding the adoption of the plan. See, e. g., Swanson v. Baker Industries, Inc., 615 F.2d 479, 483 (8th Cir. 1980). Collins did have a claim at the time the arrangement was confirmed. The claim originated in a cattle services contract. Collins did not advance any new consideration for the note; it merely represented a means for deferring payments due on the cattle services contract. Looking beyond form to substance and considering the fact that Class 3, composed of cattle investors, and Class 4, composed of trade creditors, were treated differently, we believe that Collins might well be regarded as a party to a cattle services contract. Collins argues strenuously that the use of the present tense is unambiguous and clearly removes Collins from the definition of Class 3 creditors. We note, however, that the present tense of a verb may sometimes refer to the past and to the future as well as to the present. R. Pence and D. Emery, A Grammar of Present-Day English, 262-63 (2d ed.). For example, the historical present tense is used in narratives to express past events in the present tense. Furthermore, the present tense may be used when the time is actually indefinite. Id. Therefore, we conclude that the present tense is not without some ambiguity. Indeed the present tense in the arrangement might well have been used in a more general sense to refer to all persons who hold or have held a claim pursuant to a cattle services contract. Accordingly, we conclude that the language defining Class 3 creditors is ambiguous, and we look to extrinsic evidence to shed light on the true intent of the parties.
 
 
 9
 Turning next to the question of the parties' intent in light of the extrinsic evidence offered by the appellant, it is apparent that the debtors and at least the Class 4 creditors committee assumed Collins' claim would be treated as a cattle services contract.[6] It is not disputed that the solicitation materials, which explained the proposed arrangement to the creditors, contained calculations which assumed that the unsecured portion of Collins' claim would fall within Class 3. Furthermore, Collins' debt is more nearly like the Class 3 cattle investors than the Class 4 trade creditors. Although Collins had converted his cattle services contract claim into a note, it was unlike the trade creditors. Collins did not advance any new credit to any of the debtors, but merely refinanced its claims under the cattle services contracts. Its dealings were strictly with the cattle raising part of the debtors' enterprise, not with the floriculture debtors who owed most of the trade debt.[7] There is no logical nexus between Collins and the Class 4 trade creditors consistent with the clear design of the plan to treat cattle investors and trade creditors differently. We conclude that the undisputed extrinsic evidence, including the circumstances surrounding the formulation and adoption of the arrangement, evidences a clear intent that Collins was to be treated as a Class 3 (cattle investor) creditor. We find no necessity to remand for the courts below to review the extrinsic evidence because we find, for the reasons stated, that Collins was a Class 3 creditor and that it would be clearly erroneous to conclude otherwise.[8]
 
 
 10
 Accordingly, the judgment of the district court is REVERSED.
 
 
 
 [1]
 The Chapter XI proceeding was filed in January, 1977, prior to the effective date of the new Bankruptcy Act. Former Chapter XI, formerly codified at 11 U.S.C.A. § 701 et seq. (1970), is applicable to this proceeding, because by the terms of the new Bankruptcy Act all proceedings commenced prior to the effective date of the new Bankruptcy Act continue to be governed by the former act. See In re Schwab, 613 F.2d 1279, 1280-81 n.1 (5th Cir. 1980). Therefore, all references to the Bankruptcy Act are to the old Act
 
 
 [2]
 Bankruptcy Act § 357(1), 11 U.S.C.A. § 757(1) (1970) provides that an arrangement may include "provisions for treatment of unsecured debts on a parity one with the other, or for the division of such debts into classes and the treatment thereof in different ways or upon different terms."
 
 
 [3]
 If the unsecured portion of Collins' claim, $261,000, were included in Class 4 rather than Class 3, it would reduce Class 4 creditors' dividends by 2.17 cents on the dollar to 55.83 cents and increase Class 3 creditors' dividends by 1.14 cents on the dollar to 36.14 cents. See appellants' brief, appendix 2
 
 
 [4]
 See Bankruptcy Act § 362, 11 U.S.C.A. § 762 (1970)
 
 
 [5]
 Collins' claim against Stratford of Texas and its subsidiaries was unsecured to the extent of $261,000 and, to that extent, was subject to Chapter XI disposition. See R.I.D.C. Industrial Development Fund v. Snyder, 539 F.2d 487, 493 (5th Cir. 1976), cert. denied 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977)
 
 
 [6]
 William O. Turney, Jr., Executive Vice-President of Stratford, testified that he believed Collins to be a Class 3 creditor and had so informed Donald Collins of Collins Electric Co. Collins replied that he would consider it and talk with his attorneys. John Thorson, who represented one of the Class 4 creditors in negotiating the plan, also thought that Collins was a Class 3 creditor. Donald Collins, however, testified that he believed that he was a Class 4 creditor
 
 
 [7]
 The two subsidiary companies which guaranteed the note, Delta Industries and Sherman County Feedyard, were not engaged in floriculture operations
 
 
 [8]
 The bankruptcy court concluded, in a rather cursory fashion, that "(e)ven considering the evidence, I don't find cause to classify Collins as a Class III creditor." (Tr. 60). The district court agreed. We must conclude that the finding is not supported by the evidence but is, on the contrary, against the clear weight of the undisputed evidence and is therefore clearly erroneous. Fed.R.Civ.P. 52(a)