**In re OFFSHORE DIVING & SALVAGING, INC.,**
**Debtor.**

**Bankruptcy No. 95–13051.**

United States Bankruptcy Court,
E.D. Louisiana.

June 26, 1998.

Emile L. Turner, Jr., Turner, Young, Hebbler & Babin, New Orleans, LA.

John M. Bilheimer, U.S. Department of Justice, Washington, D.C.

Bernard Berins, Bronfin & Heller, New Orleans, LA.

J. Mark Davis, Davis & Associates, Houston, TX.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter comes before the court on the objection of Wilbur J. Babin, Jr, Trustee, to the claim filed by the Internal Revenue Service.[1] The main issue to be determined is whether the IRS has a secured claim of $186,612.55. The IRS asserts it is secured based upon the provisions of the debtor's plan entered in a previous Chapter 11 case in Texas. The debtor and James B. Thompson, Jr. contend that the IRS does not have a secured claim because the IRS stipulated in the Texas case that its secured claim was $60,000, which amount has been paid. The court finds that the IRS does not have a secured claim, and must file an amended proof of claim reclassifying its claims into the priorities under 11 U.S.C. § 507(a)(8).

### I. Facts

1. Thompson Offshore Inc., was incorporated in the State of Texas on November 18, 1985. It changed its name to Offshore Diving and Salvaging, Inc. on June 16, 1988.

2. James B. Thompson, Jr. was a principal of the debtor.

3. On April 15, 1991, Offshore Diving filed Chapter 11 Case No. 91–03015–H5–11 in the United States Bankruptcy Court, Southern District of Texas, Houston Division. (the "Texas case").

4. On June 20, 1991, the IRS filed a proof of claim in the Texas case. It claimed a total of $494,995.87, and asserted that $368,516.42 of that amount was secured by liens on the debtor's property.[2]

5. A first amended disclosure statement and first amended plan of reorganization was filed in the Texas case on February 19, 1993.[3]

6. The bankruptcy court in Texas approved the first amended disclosure statement on March 17, 1993.[4]

7. The first amended plan of reorganization defined Class 2 as "[t]he holders of tax claims against the debtors that are entitled to priority under 11 U.S.C. Sec. (a)(7)(A),(B),(C),(D),(E),(F),(G)" [sic].[5] Thus, the claim of the IRS was contained in Class 2.

8. The first amended plan of reorganization treated Class 2 claims as follows:

The holders of the priority claims in Class 2 shall be paid in full in equal monthly deferred cash payments with interest at a rate of 8% per annum over a period of time not exceeding six years after the date of assessment of such claim pursuant to 11 U.S.C. Sec. 1129(a)(9)(C). *Any claimant in Class 2 shall retain its lien until payments under the Plan are complete.* Payment shall begin the first day of the first full month after plan confirmation and continue every month thereafter until paid in full. Payment amounts will be determined depending on the date of plan confirmation. All post-confirmation FICA, unemployment, and payroll taxes will be paid promptly, when due.[6]

9. The first amended plan did not include any provision allowing the debtor to designate the manner in which the IRS would be required to apply the payments made under the plan.

10. The order confirming the debtor's first amended plan was signed on May 17, 1993, and docketed on May 20, 1993.[7]

11. On June 29, 1993, Offshore Diving, the confirmed debtor, filed an objection to proof of claim No. 25 of the IRS. The debtor did not object to the amount of the IRS's claim, but only to the classification of $368,516.42 as secured because the debtor had insufficient property for the security interest to attach.[8]

---

1. Pl. 196.

2. Ex. D.

3. Ex. A and B.

4. Ex. C.

5. Ex. B at 1.

6. Ex. B at 2 [emphasis added].

7. Ex. E.

8. Ex. F.

12. On October 22, 1993, the IRS filed an amended proof of claim reflecting the classification and amounts itemized in the Agreed Order Allowing Claim of November 20, 1993.[9]

13. On November 20, 1993, the United States of America, the IRS, and Offshore Diving entered into an Agreed Order Allowing Claim that was executed by counsel for both parties and approved by the bankruptcy judge. The agreed order resolved the debtor's objection to the proof of claim, and reclassified the amount of the claims held by the IRS as follows:

| | |
|---|---|
| Secured claim | $ 60,000.00 |
| Unsecured priority claim | 372,739.11 |
| Unsecured general claim | 62,256.76 |
| Total claim amount | $494,995.87 [10] |

14. The confirmed debtor made post-confirmation payments under the plan to the IRS totaling $137,749.63 as follows:

| | |
|---|---|
| 6/29/93 | $ 16,499.87 |
| 9/14/93 | 24,749.81 |
| 11/18/93 | 16,499.95 |
| 8/22/94 | 60,000.00 |
| 12/17/94 | 20,000.00 |
| | $137,749.63 [11] |

15. Concord Offshore, Inc., on behalf of Offshore Diving & Salvaging, Inc., paid the sum of $50,000.00 to the IRS on May 31, 1995 as partial payment of Offshore's unpaid employment taxes.

16. The $60,000.00 secured claim of the IRS, plus interest, was completely paid by Offshore Diving by December 17, 1994.[12]

17. The debtor did not, however, complete its other payments to the IRS under the plan of reorganization in the Texas case.

18. Following full payment of its secured claim, the IRS did not cancel or erase the liens filed of record in 1990 and 1991 in Harris County, Texas, and in the office of the Texas Secretary of State.

19. Offshore made post-confirmation payments of sufficient number and value to be deemed as having substantially consummated the confirmed plan in the Texas case.

20. The IRS did not file any other liens against Offshore Diving before August 18, 1995.

21. Offshore Diving filed the pending case, another Chapter 11 proceeding, on August 18, 1995 (the "1995 case").

22. The 1995 case was converted from a Chapter 11 case to a Chapter 7 case on April 10, 1996.

23. Mr. Babin was appointed permanent trustee of the Chapter 7 proceeding on May 17, 1996, and has been serving from that date to the present.

24. The IRS filed its original proof of claim in the pending case on January 30, 1996. An amended proof of claim was filed on July 2, 1996, asserting a secured claim of $409,056.47, a priority claim of $538,253.32, and an unsecured general claim of $111,-789.37.[13]

25. The IRS filed a second amended proof of claim on March 4, 1998, asserting a secured claim of $409,056.47, a priority claim of $493,072.79, and an unsecured general claim of $111,324.73.[14]

26. The trustee has converted the debtor's property to cash. He holds in excess of $1.2 million in cash from the liquidation of the debtor's property.

27. As of the petition date in the present case, the debtor owned property having a total value of $186,612.55 that was the same property owned as of the petition date in the Texas case.[15]

## II. Analysis

### A. Secured or unsecured status of the IRS

The IRS argues that the plan in the Texas case provides that any Class 2 holder of a lien retains its lien until all payments under

9. Ex. G.

10. Ex. G.

11. Tr. Ex. 1A—Amended Stipulations of Fact # 11.

12. Tr. Ex. 1A—Amended Stipulations of Fact # 12.

13. Ex. L.

14. Ex. M.

15. Thompson Exs. 1–3.

the plan have been completed. It asserts that because the debtor did not complete all payments to it, it is secured up to the value of all property that the debtor held at the time of the commencement of the Texas case, and still held as of the commencement of the present case. The parties have stipulated that this amount is $186,612.55.

The debtor and Mr. Thompson contend that the IRS stipulated in the Agreed Order in the Texas case that its secured claim was $60,000. Therefore, because it is stipulated in this case that the debtor paid the $60,000, the IRS does not have a secured claim in the present case.

The determination of the status of the IRS's claim depends upon the interpretation of the meaning of the Texas plan, which provides that: "Any claimant in Class 2 shall retain its lien until payments under the Plan are complete." [16]

This provision may be interpreted in a number of ways. The phrase could mean that a Class 2 lien claimant maintains its secured position until all payments to all creditors under the plan are paid. It could also mean that a Class 2 lien claimant maintains its secured position until all Class 2 claimants are paid. Another interpretation is that a Class 2 lien claimant maintains its secured position until it is paid its entire claim, both secured and unsecured. Finally, it could mean that a Class 2 lien claimant maintains its secured position until its secured claim is paid.

A chapter 11 plan is a contract, and any ambiguities must be interpreted using contract principles.[17] State law governs the interpretation of a contract.[18] Under Texas law, a contract is ambiguous if its terms are susceptible to more than one reasonable interpretation.[19] Because there are at least four logical interpretations of the phrase, the court finds that the Texas plan is ambiguous.

When an ambiguity exists, the court may turn to extrinsic evidence to establish which interpretation more closely follows the intent of the parties.[20] Extrinsic evidence includes parol testimony, business records, documentary proof, and in the case of a judgment, evidence of the parties' pleadings.[21] The court may also refer to the "surrounding circumstances".[22]

The parties did not introduce any testimony as to intent. Evidence is available, however, as to the parties' conduct after confirmation of the Texas plan in May, 1993. On October 22, 1993, the IRS filed an amended proof of claim that reflected a secured claim of $60,000. On November 20, 1993, the debtor and the IRS entered into an Agreed Order wherein they stipulated that the IRS's secured claim was $60,000.[23]

If the IRS did not intend that its secured claim was to be $60,000, there would have been no purpose in filing an amended proof of claim, and entering into the Agreed Order. Equitable considerations as well as the conduct of the parties support an interpretation upholding the stipulation made in the Texas case. The secured claim of the IRS in the Texas case was $60,000. The parties have stipulated that this $60,000 secured claim, plus interest, was completely paid by the debtor by December 17, 1994.[24] Accordingly, the IRS is not entitled to a secured claim in this bankruptcy case based upon its secured position in the Texas case.

B. *The $8,249.94 payment of August 23, 1993*

The parties introduced evidence at the trial as to a payment made by the debtor on

16. *supra*, at 2.

17. *In re St. Mary Hospital*, 157 B.R. 235, 236–37 (E.D.Pa.1993).

18. *In re Haber Oil Co.*, 12 F.3d 426, 443 (5th Cir.1994).

19. *In re Haber Oil Co.*, 12 F.3d 426, 443 (5th Cir.1994).

20. *In re Pollock v. Federal Deposit Insurance Corp.*, 17 F.3d 798, 805 (5th Cir.1994); *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981).

21. *In re Troy Dodson Construction Co.*, 993 F.2d 1211, 1216 (5th Cir.1993).

22. *Varel v. Banc One Capital Partners, Inc.*, 55 F.3d 1016, 1020 (5th Cir.1995).

23. *supra*, at 3.

24. *supra*, at 4.

August 23, 1993 of $8,249.94. The IRS allocated this payment to a preconfirmation period, a 1988 tax, which tax had been discharged in the Texas case.

At the trial, the IRS admitted that this payment was misallocated and stated that it would reallocate the payment to a period included within the proof of claim in the Texas case. The IRS also stated it would amend its proof of claim in the present case.

### C. *Other issues*

Evidence was introduced at the trial and the parties briefed the issue of whether the IRS misallocated a payment of $50,000 received on May 31, 1995. The trustee indicated that the allocation question is only at issue if the court finds that the IRS has a secured claim. Because the court holds that the IRS does not have a secured claim, the issue need not be addressed.