IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-11107
_____

In The Matter of: JOHN RICHARD SULLIVAN,

Debtor

_____

JOHN RICHARD SULLIVAN,

Appellant.

_____

Appeal from the United States District Court
For the Northern District of Texas
(3:95-CV-1587-X)
_____

September 26, 2000

Before JOLLY, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

I

This appeal arises from a bankruptcy adversary proceeding in
which the Federal Deposit Insurance Corporation ("FDIC") and the
Resolution Trust Corporation ("RTC"), acting as receivers for two
failed lending institutions, objected to debtor Sullivan's
discharge.

Sullivan was a Texas real estate developer who, with the
assistance of his attorneys, established offshore trusts designed
to preserve his assets when his business took a downward turn
("Regent Trusts"). Sullivan's brother was the trustee of Regent

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Trusts. Regent Trusts bought real property ("Meadows North") owned by Sullivan Investments, Inc., with the purchase money loaned to Regent Trusts by InterFirst Bank Dallas. When Regent Trusts was unable to repay the loan, Sullivan loaned Regent Trusts $1.5 million to pay the debt. As his financial position worsened, Sullivan made many substantial transfers of his assets to Regent Trusts. These included $10 million in Pennzoil stock, a Ferrari automobile in 1987, about $3.5 million in various stocks in 1988, and approximately $1.7 million in stocks in 1989. In 1988, Sullivan conveyed 3.5 acres of the 4.5 acres of land surrounding his home to Regent Trusts, leaving him with a one-acre urban homestead, the maximum allowable to secure oneself from creditors under Texas law. He had a preexisting debt of $3.25 million to Country Savings bank, secured by the 4.5 acre parcel. Sullivan opened a brokerage account for Regent Trusts, which he managed, although his brother was trustee of Regent Trusts.

Sullivan also created Manhattan Beach Enterprises, a corporation that owned household goods and furnishings, nearly all of which were located in Sullivan's home. Sullivan owned all the stock in Manhattan Beach Enterprises.

In 1990, Sullivan and his accountant James Howard established Korbel Trust and Sherwood Trust, with Sullivan's father Walter as settlor and Howard as trustee. By this time, Sullivan had become unable to obtain financing for his real estate projects. He used the Korbel Trust to maintain a brokerage account, and he

2

transferred property, such as the Meadows North property, to Sherwood Trust. He transferred stock from the Regent Trust to the Korbel Trust, while the Regent Trust loaned the funds to Korbel Trust to pay for the transfer.

Sullivan transferred about $200,000 in cash and personal property to his wife and siblings in the year prior to his bankruptcy. Among these transfers was a transfer of a Mercedes Benz automobile and a painting owned by Manhattan Beach Enterprises, which owned the personal property located in Sullivan's home. Sullivan transferred these items to his wife, although these items were community property in which she already had an interest. Sullivan failed to report these transfers on his Statement of Affairs when he filed his bankruptcy petition. After filing his bankruptcy petition on February 1, 1991, Sullivan transferred proceeds from the sale of $365,000 of stock to two law firms that represented him. These transfers were made without the approval of the bankruptcy court, and he failed to disclose to the bankruptcy court that the stock remained in his brokerage account after he filed his petition. Sullivan failed to disclose many other things of consequence to the bankruptcy court. For example, he failed to disclose about $500,000 in cash dividends in 1989 and $1.1 million in cash dividends in 1990. He failed to disclose loans in amounts of $900,000 from Regent Trusts, and $175,000 from Manhattan Beach Enterprises. He failed to disclose over $700,000 paid to him from his father-in-law in a stock transaction. He failed to disclose the

3

property held by Manhattan Beach Enterprises, the Ferrari he conveyed to Regent Trusts, stock in a golf course and an auto owned by Sullivan Development Corporation. He failed to disclose his interest in large amounts of community property. There are many other assets and interests that Sullivan failed to disclose to the bankruptcy court, which are reported in detail in the bankruptcy court's opinion.[1]

The bankruptcy court denied Sullivan a discharge because it determined that Sullivan fraudulently transferred and concealed assets, intentionally failed to disclose assets, and that his claimed reliance on his attorneys was not in good faith and did not provide him with a defense to denial of discharge.

## II

Sullivan argues that, because the plan had been confirmed, the bankruptcy court was not authorized to refuse him a complete discharge. Under 11 U.S.C. 1141(d)(1), a debtor is generally entitled to a discharge when his bankruptcy plan is confirmed.[2]

---

[1] *See In re Sullivan*, 204 B.R. 919, 929-38 (Bankr. N.D. Tex. 1997).

[2] The statute provides as follows:

(d)(1)    Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--

(A)   discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--

4

The bankruptcy court applied 11 U.S.C. § 727(a), which, among other things, authorizes the court to deny discharge if the debtor makes a false oath or account to the court or transfers assets to defraud creditors. Sullivan argues that section 727(a) does not apply to his case. He argues that section 727 applies only to chapter 7 bankruptcies or to bankruptcies in chapter 11 to which 11 U.S.C. § 1141(d)(3) applies.[3] Sullivan also contends that section 1141(d)(3) does not apply to this case, since he continued in business after the bankruptcy and all or substantially all of his assets were not liquidated in the bankruptcy.

---

     (i)   a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

    (ii)  such claim is allowed under section 502 of this title; or

  (iii)  the holder of such claim has accepted the plan; and

  (B)  terminates all rights and interests of equity security holders and general partners provided for by the plan.

11 U.S.C. § 1141(d)(1).

[3] 11 U.S.C. § 1141(d)(3) provides that:

  (3)  The confirmation of a plan does not discharge a debtor if --

    (A)  the plan provides for the liquidation of all or substantially all of the property of the estate;

    (B)  the debtor does not engage in business after consummation of the plan; and

    (C)  the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

5

Section 1141(d)(3) does not apply unless all three statutory requirements are met.[4] It bars discharge only where the debtor has liquidated his assets in the proceeding, has not continued in business, and would be denied a discharge under section 727(a) if he were not in a chapter 7 liquidation. Since Sullivan continued in business after the bankruptcy and since his assets were not completely liquidated, § 1141(d)(3) would not bar his discharge. However, the bankruptcy court did not apply § 1141(d)(3) to deny Sullivan a discharge. Instead, the court applied § 727(a) because the language of the confirmation plan permitted the court to do so.[5] Section 1141(d)(1) expressly provides that an exception to discharge may be founded upon "the plan, or in the order confirming the plan."[6]

Section 9.1 of Sullivan's plan provides that "[t]he Debtor shall not receive a discharge unless the Debtor prevails under all Section 727 proceedings." Sullivan did not prevail in the section 727 proceeding brought against him by the FDIC and RTC. Accordingly, the bankruptcy court found that Sullivan had fraudulently conveyed (or concealed from the bankruptcy court) millions of dollars in assets and transfers.

---

[4] *See In re T-H New Orleans Limited Partnership*, 116 F.3d 790, 803 (5th Cir. 1997).

[5] *See In re Sullivan*, 153 B.R. 746, 750 (Bankr. N.D. Tex. 1993).

[6] 11 U.S.C. § 1141(d)(1).

Sullivan argues that he was led to believe that he would be denied discharge only under section 1141(d)(3) and that any section 727 proceedings would be brought to attempt to deny him discharge under § 1141(d)(3) only.[7] He claims that the language "all Section 727 proceedings" in his bankruptcy plan is ambiguous. Since the plan provided that he could be denied discharge if he lost a section 727 proceeding - and he lost a section 727 proceeding - the bankruptcy court was empowered to deny him a discharge. There is no ambiguity in the phrase, "all Section 727 proceedings."

Contrary to Sullivan's assertions, section 9.1 of the plan also does not contravene other statutory provisions. To condition discharge on a debtor's prevailing under all section 727 claims merely supplements the scenario depicted in section 1141(d)(3). Although there may be some limits to the scope of the plan exception under section 1141(a),[8] the instant plan provision fails to exceed these boundaries.

Sullivan's second principal argument - i.e., that he should receive a discharge under section 1141(d)(3) - similarly proves unavailing. Section 1141(d)(3) does not bar discharge, as Sullivan did not liquidate his assets, because he bought much of those

---

[7] Mancuso, the bankruptcy trustee, sought to have Sullivan denied discharge under section 1141(d)(3) in a section 727 proceeding.

[8] *See, e.g.*, *In re Artisan Woodworkers*, 225 B.R. 185, 190 (9th Cir. BAP 1998) (holding that a confirmed plan may not override section 1141(d)(2) to extinguish or discharge an otherwise nondischargeable debt).

assets from the trustee and used them to continue in his real estate business. However, as the preceding discussion reveals, this argument is irrelevant; the court properly denied Sullivan a discharge under section 1141(d)(1), pursuant to the provisions of his confirmed bankruptcy plan.


III

Sullivan further argues that, under his bankruptcy plan, the FDIC and RTC - along with other Class 5 creditors - were required to dismiss their claims against him with prejudice. Section 5.1 of Sullivan's bankruptcy plan provides that litigation by Class 5 creditors listed in Exhibit B attached to the plan would be dismissed with prejudice. Exhibit B encompasses litigation brought by the FDIC and RTC against Sullivan and his trusts. However, Section 4.5 of the plan provides that the creditors whose claims are listed on Exhibit A would be paid pro rata pursuant to the plan, but that they could seek repayment in full "against John Sullivan in the event of a denial of discharge or dischargeability as to a particular claim." The creditors listed on Exhibit A of the plan included the FDIC and RTC.

The district court interpreted the two provisions of the plan to mean that Sullivan would be able to obtain dismissals with prejudice unless he were denied discharge - in which case the Class 5 creditors could pursue their claims against him. Sullivan argues

8

that the plan is ambiguous and that the ambiguity should be read against the trustee, who drafted the agreement and in Sullivan's favor. Sullivan's preferred reading of the plan references only Section 5.1, which calls for dismissals with prejudice and release of claims. His reading completely ignores Section 4.5, which allows Class 5 creditors to pursue their claims against him if he is denied discharge.

Chapter 11 plans are construed as contracts.[9] A court should examine an entire contract to harmonize its provisions and avoid rendering some of them meaningless.[10] Reading the provisions of the plan together, there is no ambiguity. Class 5 creditors are to be paid pro rata out of the bankruptcy estate, but they may pursue their claims against Sullivan if he is denied discharge. Sullivan's argument that he must be categorically discharged pursuant to the plan ignores its terms and is without merit.

IV

In an effort to avoid paying his debts, Sullivan fraudulently transferred and concealed millions of dollars and failed to disclose many of these transactions and assets to the bankruptcy court. Sullivan's bankruptcy plan provided that he could be denied discharge if he did not prevail in all section 727 proceedings. As

---

[9] *See In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981).

[10] *See Chapman v. Orange Rice Milling Co.*, 747 F.2d 981, 983 (5th Cir. 1984).

Sullivan did not prevail in the section 727 proceeding brought by the FDIC and RTC, we find that the court correctly denied him a discharge. The unambiguous language in the plan compels no other conclusion.

AFFIRMED.