IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-11097
_____

IN THE MATTER OF: NATIONAL GYPSUM CO,

                                        Debtor,

NATIONAL GYPSUM CO,

                                        Appellee,

        versus


JEFF P. PROSTOK; NGC ASBESTOS DISEASE
AND PROPERTY DAMAGE SETTLEMENT TRUST,

                                        Appellants,

PETER C. BROWNING; EDWARD A. PORTER;
ALLAN v. CECIL; ROBERT M. PROKAY;
AUTINO O. MARAIA; GERALD P. CARROLL;
KENNETH L. BLOCK; CHARLES J. CELLA;
JOHN P. HAYES; JAMES B. HENDERSON;
BERNARD L. KASRIEL; LINDA MCFADIN SPAKE,
in her capacity as Co-Executrix of the
estate of Robert L. McFadin; BARBARA
MCFADIN BISHOP, in her capacity as
Co-Executrix of the Estate of Robert L.
McFadin; THE NORTHERN TRUST BANK OF TEXAS,
in its capacity as Co-Executrix of the
Estate of Reece A. Overcash; CYNTHNIA A.
HARTLEY,

                                        Appellees.
_____

In the Matter of: NATIONAL GYPSUM CO.,

                                        Debtor,

PETER C. BROWNING; ALLAN V. CECIL;
EDWARD A. PORTER; ESTATE OF ROBERT
M. PROKAY; AUTINO O. MARAIA; GERALD

P. CARROLL; KENNETH L. BLOCK; CHARLES J. CELLA; JOHN P. HAYES; JAMES B. HENDERSON; BERNARD L. KASRIEL; BARBARA MCFADIN BISHOP; LINDSEY MCFADIN SPAKE; CHRISTA OVERCASH; NORTHERN BANK OF TEXAS, NA; CYNTHIA A. HARTLEY,

                                        Appellees,

versus

JEFF P. PROSTOK; NGC ASBESTOS DISEASE AND PROPERTY DAMAGE SETTLEMENT TRUST,

                                        Appellants.

---

In the Matter of: NATIONAL GYPSUM CO,

                                        Debtor,

NATIONAL GYPSUM CO,

                                        Appellee,

versus

JEFF P. PROSTOK; NGC ASBESTOS DISEASE AND PROPERTY DAMAGE SETTLEMENT TRUST,

                                        Appellants.

---

Appeals from the United States District Court
for the Northern District of Texas
(3:98-CV-1355)

---

June 14, 2002

2

Before GARWOOD, WIENER, and CLEMENT,[1] Circuit Judges.

GARWOOD, Circuit Judge:[2]

Appellants Jeff P. Prostok ("Prostok") and the NGC Asbestos Disease and Property Damage Settlement Trust ("the Trust") filed adversary actions in the bankruptcy court seeking a declaratory judgment that the fee-shifting provision in National Gypsum Company's Chapter 11 reorganization plan would not apply to their pending suits against the officers and directors of National Gypsum Company (NGC) and their financial advisor.  The bankruptcy court granted declaratory judgment in favor of the plaintiffs, but on appeal the district court reversed.  Prostok and the Trust now appeal to this court.  We affirm the district court.

## Background

NGC manufactures and supplies products and services to the building and construction markets.  Faced with liability from asbestos lawsuits and debt from a mid-80s leveraged buyout, NGC and its parent company Aancor Holdings, Inc. voluntarily filed for Chapter 11 bankruptcy in 1990.  The bankruptcy court approved the debtor's proposed reorganization plan in 1993.  This plan (and the confirmation order) contained language that released the officers

---

[1]Judge Edith Brown Clement participated by designation in the oral argument of this case as a United States District Judge for the Eastern District of Louisiana.  Since that time she has been appointed as a Fifth Circuit Judge.

[2]Pursuant to 5TH CIR. R.47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

3

and directors of NGC and their agents and financial advisors from liability for certain good faith actions taken during the reorganization. The reorganization plan also required that in any lawsuit challenging the good faith of those released, the parties would have to provide adequate assurance that the losing party would be able to pay the winner's attorney's fees. The bondholders did not appeal the confirmation order, even though the plan had been strenuously opposed by the committee representing the bond and trade creditors.

We have twice before considered the NGC reorganization. *See In re National Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997); *In re National Gypsum Co.*, 219 F.3d 478 (5th Cir. 2000). This appeal does not concern those cases, but instead has its origin in a subsequent lawsuit. In 1995, Prostok filed a class action lawsuit in Texas state court representing the class of junior bondholders against the officers and directors of NGC and their financial advisor during the reorganization, Donaldson, Lufkin & Jenrette ("DLJ"). Prostok contended the defendants breached their fiduciary duty and committed fraud because they concealed and failed to disclose a planned reduction in workforce during the reorganization; this reduction, Prostok alleged, would have provided more return to the junior bondholders by causing the company to be valued more highly. The defendants asserted that the fee-shifting provision of the reorganization plan applied to the

4

lawsuit and thus Prostok should be required to post bond to guarantee that he would be able to pay their attorneys' fees if he lost.

In response, Prostok filed an adversary action in the bankruptcy court seeking a declaratory judgment that the fee-shifting provision of the plan did not apply to his lawsuit.  The state court defendants counterclaimed for declaratory judgment, generally alleging that Prostok's claim was precluded by res judicata and collateral estoppel.  In 1996, the bankruptcy court affirmed the finality of the reorganization plan but declined to consider any of the declaratory judgment actions.  On appeal in 1997, the district court likewise affirmed the finality of the Plan but remanded to the bankruptcy court for further consideration of the declaratory judgments.  The Trust, which liquidates and resolves asbestos claims against NGC, then asked for expedited consideration of the Prostok declaratory judgment because it was contemplating an  action similar to Prostok's.  The bankruptcy court declined to expedite the decision, and the Trust filed its complaint as an adversary action in the bankruptcy court in 1997.

On remand in 1998, the bankruptcy court addressed both Prostok and the Trust's motions.  The court declared that the fee-shifting language did not apply to their suits. After some consideration, the bankruptcy court subsequently chose to abstain from the

defendants' counterclaims in favor the ongoing state court proceeding. Thus, in May 1998 the bankruptcy court reiterated the declaratory judgment in favor of the plaintiffs that the fee-shifting provision did not apply to their suits, awarded final judgment to that effect, and administratively closed the case.

In April 1999, the state court granted the defendants' motion for summary judgment against Prostok. In October 2000, the United States District Court for the Northern District of Texas reversed the bankruptcy court's decision and held that the suits by Prostok and the Trust were subject to the fee-shifting language. Prostok and the Trust now appeal that decision to this Court. Since that appeal, both the Trust and Prostok have settled with DLJ and this court has dismissed DLJ from this appeal.

## Discussion

### I. This Court Has Jurisdiction

We requested the parties to provide further briefing as to whether the bankruptcy court's order was final for purposes of appeal under 28 U.S.C. § 158(d), citing the concerns raised in *In re Aegis Specialty Marketing Inc. of Ala*., 68 F.3d 919 (5th Cir. 1995). We are persuaded that we have jurisdiction. The district court remanded to the bankruptcy court, which then disposed of the defendants' counterclaims by abstaining in respect to them in favor of the ongoing state court proceedings. We are persuaded that the bankruptcy court's orders in connection with the abstention had the

6

effect of investing its judgment concerning the fee-shifting provision with the requisite section 158(d) finality. *See Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585, 589 (5th Cir. 1998). Because this situation does not present the finality concerns at issue in *Aegis*, we agree with the district court that the bankruptcy court's decision was final and thus appealable under 28 U.S.C. § 158(d).

## II. The Fee-Shifting Language Applies to the Appellants' Suits

The parties call upon us to decide the meaning of paragraph fifty of the bankruptcy reorganization order. This passage reads as follows:

> *Exoneration and Reliance.* Pursuant to *Section 5.22* of the Plan and provided that the respective affiliates, officers, directors, shareholders, members, representatives (including the Legal Representative), attorneys, financial advisors, and agents of the Debtors, Reorganized NGC, New NGC, the Legal Representative, and the Official Committees act in good faith, they shall not be liable to any Claimant or other party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the operation of the Debtors, the Debtors' Subsidiaries, New NGC, or Reorganized NGC; (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents, including the Assets Sale pursuant to the Assets Purchase Agreement, the NGC Asbestos Settlement Fund pursuant to the NGC Asbestos Settlement Fund Documents; or (c) the administration of the Plan or the assets and property (including any Cash distributed to the Claimants holding Claims which are classified in NGC Class 3) to be distributed pursuant to the Plan and the Plan Documents other than for willful misconduct or gross negligence. The Debtors, Reorganized NGC, New NGC, the Official Committees, the Legal Representative, and their respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or

professionals employed by the Debtors, Reorganized NGC, New NGC, the Official Committees, and the Legal Representative, respectively, and such reliance shall presumptively establish good faith. In any action, suit or proceeding by any Claimant, Interestholder or other party in interest contesting any action by, or non-action of, Debtors, Reorganized NGC, New NGC, the Official Committees, the Legal Representative, or their respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party and as a condition of going forward with such action, suit, or proceeding at the outset thereof, all parties thereto shall be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

The first sentence of this passage (the "release provision") releases the debtor parties[3] from liability for certain actions taken in good faith during the period between the petition for bankruptcy and the effective date of the proposed plan, with the caveat that willful misconduct and gross negligence are never released. The third sentence (the "fee-shifting provision") applies to any lawsuit by an interestholder[4] asserting a lack of good faith in any action by the debtor parties, and requires the losing party to pay the winner's attorneys' fees. Under this provision, all parties must provide assurance they will be able to

---

[3] We will use the title "debtor parties" to refer to the group described in the order as "the respective affiliates, officers, directors, shareholders, members, representatives (including the Legal Representative), attorneys, financial advisors, and agents of the Debtors, Reorganized NGC, New NGC, the Legal Representative, and the Official Committees."

[4] We will use the title "interestholder" to refer to the group described in the Plan and order as "Claimant, Interestholder or other party in interest."

8

pay those fees in the event their suit fails.

The bankruptcy and district courts disagreed on the proper interpretation of these two sentences. The bankruptcy court began its opinion by recognizing that the fee-shifting provision was final and binding on the parties, but opined that it "may have entered the order adopting the fee-shifting provision in error", citing *Ashland Chemical, Inc. v. Barco, Inc.*, 123 F.3d 261 (5th Cir. 1997), noted that "Congress has not expressly authorized the fee-shifting provision" and concluded that therefore "the court must construe and apply it narrowly." The court also stated in this respect "considering that this fee-shifting provision violates public policy, the court holds that it does not apply to claims based on gross negligence or willful misconduct relating to the confirmation process." Having thus restricted its view, the bankruptcy court held that the fee-shifting provision only applied to suits challenging those actions within the limited scope of the earlier release provision. Under this interpretation, therefore, a litigant triggers the fee-shifting provision only if he asserts bad faith in the operation, implementation or administration of NGC, yet at the same time avoids any allegation of willful misconduct or gross negligence. The bankruptcy court then found that the plaintiffs' suits would not come within the fee-shifting provision for two reasons: the suits involved allegations of gross negligence and the suits concerned actions relating to the

9

confirmation process and not the three categories of actions listed in the release provision.

On appeal, the district court reversed. The district court began by finding that there was no reason to narrowly construe the fee-shifting provision because *Ashland Chemical* did not apply and there was no public policy against fee-shifting provisions in specific case orders. Moreover, the district court held that *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987) required it to enforce the reorganization plan even if the plan's provisions exceed the powers set forth in the Bankruptcy Code. The district court held that the fee-shifting provision was not coterminous with the release provision. Under this reading, the fee-shifting provision applies to any lawsuit by an interestholder that can be characterized as a challenge to the good faith of the debtor parties' actions in relation to the bankruptcy. The district court then found that the plaintiffs' suits could be characterized as such, adding in the alternative that the suits challenged the "operation" of NGC and thus should come within even the bankruptcy court's reading of the fee-shifting language.

Prostok and the Trust appeal from the decision of the district court, arguing that the bankruptcy court made the correct interpretation of the language at issue. NGC and the Officers and Directors urge us to affirm. For the reasons explained below, we agree with the district court.

10

*A. The Standard of Review*

We first turn to the proper standard of review to be applied in this case. The legal principles at work were set forth in an earlier *National Gypsum* decision:

> [W]e should review *de novo* the purely legal issues--e.g., the effect of the documents on New-NGC's liability for Unknown Claims--but should defer to the bankruptcy court's reasonable resolution of any ambiguities in those documents. Because New-NGC is correct that the bankruptcy court's ultimate determination of the meaning of the Plan and Confirmation Order is a legal one, however, the documents must truly be ambiguous, even in light of other documents in the record, before we will defer. *In re National Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000).

Stated another way, we review the plan *de novo* for "true" ambiguity, and if we find the language "truly . . . ambiguous" we then normally defer to the bankruptcy court's interpretation of that language.

*B. There Is No Reason To Construe The Plan Narrowly*

The bankruptcy court did not determine that the fee-shifting provision was ambiguous. Nor did it expressly or inferentially rely to any extent on its own intention or understanding respecting that provision *when* it approved the Plan or on its understanding of the *then* intentions of any of the parties in that regard or on its general familiarity with the NGC bankruptcy. Rather, the bankruptcy court determined, in 1998, that the 1993 fee-shifting provision "violates public policy" and that the court had likely committed legal error in adopting it in 1993, and that therefore the provision "must" be construed and applied "narrowly". These

11

legal conclusions were based on this Court's 1997 decision *Ashland Chemical*. We hold, however, that the bankruptcy court erred in those legal conclusions.[5]

*Ashland Chemical* should be distinguished, however. That case concerned a local rule contained in the Eastern District of Texas's Civil Justice Expense and Delay Reduction Plan that altered the traditional "American Rule" for *all* future civil cases in the district by shifting the responsibility for fees onto the losing party in certain circumstances depending on the outcome of the case. *See id.* at 262. We began by examining *Aleyska Pipeline Service Co. v. Wilderness Society*, 95 S.Ct. 1612 (1975) and its progeny and noted that "these cases stand for the proposition that substantive departures from the American rule and its traditional exceptions must be authorized by Congress." *Id.* at 264. We found that because the fee-shifting rule was based on the outcome of the case and was imposed generally on all future cases, it was indeed a substantive departure that required Congressional authorization. *Id.* at 265.

We do not reach the same conclusion here, however. The narrow scope of the fee-shifting provision is not the sort of broad, generally applicable, "substantive departure" at issue in

---

[5]*Cf. In Re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) ("the clear error standard does *not* apply to findings of fact resulting from application of an incorrect legal standard"); *Merritt-Campbell Inc. v. RxP Production Inc.*, 164 F.3d 957, 961 (5th Cir. 1999) (trial court's finding accepted "unless clearly erroneous or influenced by an incorrect view of the law").

*Ashland Chemical*, but is instead imposed by a specific order in one pending case on a specific group of parties to that case in one narrow circumstance. Furthermore, a fee-shifting provision in a reorganization plan resembles the traditional exceptions to the "American Rule" far more than the substantive provisions criticized in *Ashland Chemical*. Parties may circumvent the "American Rule" by contracting otherwise. *See, e.g.*, *Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 35 (5th Cir. 1992). We recognize that a reorganization plan lacks some of the characteristics of the classic contract, but we also note that such plans "should be construed basically as a contract." *In re Stratford of Texas, Inc.*, 635 F.2d 365 (5th Cir. 1981). Accordingly we find the fee-shifting language does not violate the restrictions set forth in *Ashland Chemical.*

Indeed, we believe that this circuit's case law compels us to enforce the order as written. In *Shoaf*, we held that a reorganization plan no longer subject to challenge by appeal should be enforced as written even though it arguably violated a general provision of the Bankruptcy Code that discharge of a debtor does not affect the liability of others for the debtor's debts. *Id*. 815 F.2d at 1050. The bondholders of National Gypsum did not appeal the bankruptcy plan, and the Plan doesn't violate the statutory terms of the Bankruptcy Code. We must therefore enforce the terms of the plan against them. The Trust contends that the district

13

court's reading of the plan was unpredictable whereas *Shoaf* dealt with a predictable challenge that could have been easily asserted on appeal. We disagree; the possibility that the fee-shifting language would be applied to "any [suit] by any [Claimant] contesting any action by, or non-action of, [the debtor parties] as not being in good faith" was apparent on the face of the document and well within the power of the bondholders to challenge on appeal.

C. *There Is No Ambiguity In The Plan*

We find no ambiguity in the statement "[i]n any [suit] by any [Claimant] contesting any action by, or non-action of, [the debtor parties] as not being in good faith." By its plain terms, the fee-shifting provision unambiguously applies to any and all suits in which an interestholder alleges a lack of good faith by the debtor parties in relation to the bankruptcy. The fee-shifting language simply does not restrict the types of activities to which it applies, even though the repetition of terminology throughout the paragraph strongly suggests that the drafters would have reiterated any applicable restrictions. Instead, the plan states that fee-shifting will be imposed on *any* suit by an interestholder contesting any action by the debtor parties as lacking good faith. We also note that the bankruptcy court reasoned that its interpretation came from reading paragraph 50 "as a whole," but in our view that only highlights the contrasts between the two

14

sentences. The broad scope of the words "any suit" by "any Claimant" challenging "any action" lie in stark contrast to the limitations set forth in the release language.

The appellants advance various arguments why the scope of the fee-shifting provision should be narrowed to match the release provision, but we are not persuaded. The appellants first argue that the use of the phrase "good faith" in both provisions requires them to be read identically, but we reject their fallacious reasoning. The release provision does not purport to define "good faith," but rather incorporates that concept as one boundary of the release afforded the debtor parties. That is, the release language only purports to release the debtor parties from liability when they (1) act in good faith, (2) act with regard to the three stated categories, *and* (3) act without willful misconduct or gross negligence. Items (2) and (3) do not narrow the concept of "good faith," they narrow the scope of the *release*. In contrast, the fee-shifting language encompasses all cases alleging a lack of "good faith" without being further narrowed by items (2) and (3) above. The concept of "good faith" remains constant in both provisions. We thus find no reason to read the limitations of one sentence into the other merely because they use the same, independently stated concept.

The appellants also claim that absurd results arise from the district court's clear reading of the Plan language. These

15

allegations arise from strained readings of the text, however, because the fee-shifting language is limited in ways the appellants do not admit. First, fee-shifting only applies to suits that allege a lack of good faith, which *Black's* defines *inter alia* as "honesty in belief or purpose," "faithfulness to one's duty or obligation," and "absence of intent to defraud or to seek unconscionable advantage." BLACK'S LAW DICTIONARY (7th ed. 1999). The fee-shifting provision thus applies only to cases alleging such things as dishonesty, fraud, breach of fiduciary duty and deceit. This limitation negates Prostok's attempt to argue that automobile accidents would fall within the scope of the fee-shifting provision. Second, the fee-shifting provision only applies to those parties to the NGC bankruptcy who are carefully enumerated in the Plan. The provision's scope therefore cannot go beyond the scope of the bankruptcy and reorganization. Prostok argues hypothetically that the appellee's reading of this provision would require him to post bond before suing NGC's general counsel for an instance of slander unrelated to NGC business, but this is again a strained interpretation. The Plan limits the possible plaintiffs and defendants to the parties enmeshed in the National Gypsum reorganization, thereby demonstrating that the only reasonable interpretation of the fee-shifting provision is that it only applies to lawsuits against the officers and advisors *in their capacities as such* in relation to the NGC bankruptcy. Prostok's

16

hypothetical fails to take this limitation into account, and we conclude that applying the Plan language as written does not give rise to absurd results.

We can find no ambiguity in the fee-shifting provision, and thus we will enforce it as written with no deference to the bankruptcy court's interpretation.

## III.  The Fee-Shifting Provision Applies to The Appellants' Suits

Having determined that the fee-shifting provision unambiguously applies to any suit by an interestholder asserting that any action by any of the debtor parties (in their capacities as such and in relation to the NGC bankruptcy) lacked good faith, we turn to the question of whether the suits by Prostok and the Trust come within the scope of that provision.  We conclude that they do.

The district court stated that the allegations of gross negligence and intentional misdeeds "necessarily translate into lack of good faith."  Appellants argue that this statement renders the final condition of the release provision redundant.  The release provision only protects actions taken in good faith.  Yet, the release provision then goes on to make clear that actions that are "willful misconduct or gross negligence" will not be protected.  Appellants argue that unless the drafters of the reorganization plan (and, by extension, the bankruptcy court in drafting the order) intended this later limitation to be a needless redundancy,

17

they must have contemplated that some actions taken in good faith might also be characterized as "willful misconduct or gross negligence."[6] Thus, it is claimed that the Plan distinguishes these concepts from good faith, and thus an allegation of willful misconduct or gross negligence cannot always *automatically* trigger the fee-shifting provision. However, a more reasonable reading of the release provision in this respect is that its "willful misconduct or gross negligence" language is not any sort of a negative definition of "in good faith", but is rather merely intended to foreclose possible *argument* that a given action, though properly found to constitute willful misconduct or gross negligence, was nevertheless *released* because it was taken "in good faith."

Appellants also claim that the fee-shifting provision cannot apply to willful misconduct or gross negligence because those items were not specifically listed. We disagree; the fee-shifting provision applies to *all* cases alleging a lack of good faith regardless of what other labels might also be applied. A comparison is helpful in making this distinction. The release provision begins with the scope of "good faith" and then is narrowed through successive limitations like the exclusion of "willful misconduct" and "gross negligence." In contrast, the fee-

---

[6] This possibility, while slender, is not unprecedented. National Gypsum correctly points out that TEX. CIV. PRAC. & REM. CODE § 74.001(a) protects actions taken in good faith that are not "wilfully or wantonly negligent."

18

shifting provision begins with the scope of "lack of good faith" and then is not further narrowed. This indicates that the only relevant question is whether the suits can be characterized as alleging a "lack of good faith;" while "willful misconduct and gross negligence" may overlap with (or remain independent of) "good faith," those concepts are simply irrelevant.

Regardless of whether the allegations in the Prostok and Trust suits might also be characterized as "willful misconduct or gross negligence," we find that the suits are replete with accusations that the defendants acted in bad faith. The petitions contain allegations of misrepresentation including an assertion that the defendants made these representations "*in bad faith* with no intent to act in accordance with the representations." (emphasis added). Both plaintiffs also alleged fraud and breach of fiduciary duty arising out of "providing false, misleading or incomplete information." The Trust also alleges the defendants committed "actual . . . fraud" by intentional "misrepresentations" and by failing to "disclose" the possible cost savings -- assertions encompassing the dishonesty antithetical to good faith. These assertions of actual fraud, deceit, falsehood and betrayal of fiduciary trust necessarily challenge the good faith of the defendants. Indeed, the very foundation of the appellants' lawsuits is a fundamental lack of good faith by the defendants, both in their particular allegations of conduct and in their

19

theories of legal liability.  We therefore have no trouble holding that these lawsuits "contest[] any action by, or non-action of, [the debtor parties] as not being in good faith", and we affirm the district court.

## IV.  The Lawsuits Challenge Bad Faith in the Operation of the Debtors

We need not rely solely on our own interpretation of the Plan language.  We also conclude that the appellants' lawsuits allege that the defendants lacked good faith in the operation of the debtor companies.  This places the appellants within the bankruptcy court's restricted interpretation of the fee-shifting provision, and provides a separate ground for affirming the district court's opinion.

The first of the three protected categories in the release provision reads as follows:

> ...they shall not be liable to any Claimant or other party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the operation of the Debtors, the Debtors' Subsidiaries, New NGC, or Reorganized NGC . . . .

Appellants characterize the "operation" of National Gypsum as the manufacture and sale of gypsum wallboard, exclusive of actions relating to the reorganization and bankruptcy.  The bankruptcy court similarly distinguished between the reorganization and the day-to-day business of the company.  This interpretation cannot stand once the details of this provision are carefully examined,

20

however. The clause applies to both the debtors and "Reorganized NGC." The clause is limited, though, to the time frame stretching from the filing of the bankruptcy petition to the adoption of the reorganization plan. Because the reorganized NGC does not exist until the reorganization plan is adopted, the only way the defendants could "operate" the reorganized NGC would be through the bankruptcy and reorganization process. Any other reading would render the addition of "Reorganized NGC" mere surplusage. We therefore reject the appellants' claims that the concept of "operation" cannot include actions related to the bankruptcy and reorganization process. The allegations of fraud, misrepresentation and breach of fiduciary duty contained in their lawsuits fall within the scope of the release provision, and thus the fee-shifting provision (even as interpreted by the bankruptcy court) would apply to the appellants.

Moreover, both appellants have challenged actions that are squarely within even their own understanding of the concept of "operation." They argue that the defendants did a poor job of running National Gypsum because they failed to "ascertain" a possible $30 million cost savings from a reduction in force. The Trust went so far as to call this failure "gross negligence." This allegation clearly encompasses the day-to-day operations that the appellants claim is the proper scope of the release provision. This second-guessing of NGC management's business judgment

21

necessarily implicates the release provision's protections for "operation." We therefore find that even under the bankruptcy court's erroneously restrictive reading of the reorganization plan, in which the fee-shifting provision is limited to non-bankruptcy activity described in the release provision, the appellants are still bound by the fee-shifting provision.

## Conclusion

We hold that the Prostok and Trust lawsuits fall within the fee-shifting provision. The decision of the district court is therefore

AFFIRMED.